PUBLISHED

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                                    No. 95-5536

JAMES KEVIN NELSON,
Defendant-Appellant.

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
Benson E. Legg, District Judge.
(CR-94-262-L)

Argued: September 24, 1996

Decided: December 18, 1996

Before NIEMEYER, MICHAEL, and MOTZ, Circuit Judges.

_____

Affirmed by published opinion. Judge Niemeyer wrote the opinion,
in which Judge Michael and Judge Motz joined.

_____

**COUNSEL**

**ARGUED:** Larry Allen Nathans, Baltimore, Maryland, for Appellant.
Jan Paul Miller, Assistant United States Attorney, Greenbelt, Mary-
land, for Appellee. **ON BRIEF:** Lynne A. Battaglia, United States
Attorney, Greenbelt, Maryland, for Appellee.

_____

**OPINION**

NIEMEYER, Circuit Judge:

In connection with his cocaine conspiracy conviction, James Kevin Nelson contends that the district court erred (1) in refusing to suppress $43,000 seized from his shoulder bag when he was arrested, (2) in failing at any time during his four-day trial to instruct jurors to refrain from discussing the case with others, and (3) in replacing two jurors who had holiday travel plans beginning on what would have been the fifth day of trial. While we find that the district court erred in failing to instruct jurors to refrain from discussing the case, the error in the circumstances of this case does not require us to order a new trial, and we find no merit in the other assignments of error. We therefore affirm.

I

After his arrest, Omar Grajales, who was a cocaine supplier to the defendant Nelson, agreed to cooperate with agents of the Drug Enforcement Administration (DEA). With Grajales' cooperation, DEA agents arrested Nelson when Nelson came to Grajales' apartment to pick up two kilograms of cocaine. At the time of his arrest, Nelson was carrying a black shoulder bag.

While Nelson stood with his hands on his head, DEA agents attempted to check the bag. But because Nelson's hands were on his head, they could not remove the bag which was slung over his shoulder. Unzipping the bag, the agents noticed that it contained money. At that point, the agents lowered Nelson's hands, removed the bag from his shoulder, and took Nelson to an upstairs room for questioning. Within minutes, a DEA agent searched the bag and found $43,000, the approximate street price of two kilograms of cocaine and $1,000 less than the amount which Nelson had earlier agreed to pay Grajales.

After being advised of his Miranda rights, Nelson confessed to the agents that he had come to Grajales' apartment to purchase two kilograms of cocaine and that he had purchased a kilogram approximately

every two to three weeks over the previous year, which he then divided into one-ounce bags to sell or "front" to his customers.

Nelson filed a pretrial motion to suppress the $43,000 which was seized from his shoulder bag. After a hearing, the district court denied the motion and allowed the government at trial to introduce evidence of the $43,000 seizure. Nelson now contends that the district court's ruling violated his Fourth Amendment rights, arguing that the DEA agents did not have a warrant to conduct the search and, because the DEA agents separated Nelson from his bag and did not search it immediately, the search was not "incident to arrest."

To protect the safety of arresting officers and to avoid the destruction of evidence, the Supreme Court has long recognized an exception to the Fourth Amendment warrant requirement for searches incident to arrest. See United States v. Edwards, 415 U.S. 800, 807-09 (1974). Although the "incident to arrest" justification for warrantless searches does not permit an indefinite delay in a search, see United States v. Chadwick, 433 U.S. 1, 14-15 (1977) (holding that a search more than one hour after arrest and at a police station was not within the exception), the justification does last for a reasonable time after the officers obtain exclusive control of the container that is to be searched, see Edwards, 415 U.S. at 805, 807-09 (upholding a ten-hour delay in search and seizure of clothing where overnight delay was necessary to purchase replacement clothing for incarcerated defendant); New York v. Belton, 453 U.S. 454, 462-63 (1981) (approving admission of cocaine found in a jacket in the back seat of a car even though officers had removed the suspect from the car before searching the jacket). Indeed, in a case remarkably similar to that before us, we held specifically that "when a container is within the immediate control of a suspect at the beginning of an encounter with law enforcement officers," the officers can search the container incident to an arrest if (1) the search is conducted at the scene of the arrest and (2) any delay in the search is a "reasonable" one. United States v. Han, 74 F.3d 537, 543 (4th Cir.), cert. denied, 116 S. Ct. 1890 (1996); see also United States v. Litman, 739 F.2d 137, 139 (4th Cir. 1984) (en banc) (upholding search of a bag immediately after arrest when the bag was no longer under the suspect's control).

3

Nelson contends that in this case the incident-to-arrest exception does not apply because the risks of danger and destruction of evidence had passed. He argues:

> The search of the bag was not contemporaneous with Mr. Nelson's arrest, was not conducted when Mr. Nelson was within the same part of the house as the search, was not searched within the same room in which it was seized and was performed when Mr. Nelson was already handcuffed.

While the need for the incident-to-arrest exception is indeed grounded on the need to protect law enforcement officers and evidence, the validity of such a search does not end at the instant the risks justifying the search come to an end. Even though the warrant exception is well grounded on the existence of exigent risks attending arrest, the pragmatic necessity of not invalidating such a search the instant the risks pass is well accepted. See, e.g., Belton, 453 U.S. at 462 n.5 ("[U]nder this fallacious theory no search or seizure incident to a lawful custodial arrest would ever be valid; by seizing an article even on the arrestee's person, an officer may be said to have reduced that article to his `exclusive control'"). Just as arresting officers need not determine that the defendant <u>actually</u> have a gun or <u>actually</u> intend to destroy evidence before conducting a search incident to arrest, they need not reorder the sequence of their conduct during arrest simply to satisfy an artificial rule that would link the validity of the search to the duration of the risks. Pragmatic necessity requires that we uphold the validity and reasonableness of a search incident to arrest if the search is part of the specific law enforcement operation during which the search occurs. And we so held in <u>Han</u> .

In this case, agents arrested Nelson in the front room of an apartment. During the course of that operation they removed his shoulder bag, took him to a separate upstairs bedroom for questioning, and searched the bag -- all within a few minutes. The district court did not err in denying Nelson's motion to suppress the fruits of this search.

II

Nelson next contends that he should be afforded a new trial because the district court failed to instruct jurors at any time during

trial that they should not discuss the case with anyone outside the courtroom and that they should not discuss the case among themselves until they retire to deliberate.

While the district court did admonish the jury in its final instructions that "anything that you may have seen or heard about this case outside the courtroom is, of course, not evidence and must be entirely disregarded," our review of the record and the government's concession confirms that at no time did the district court provide the jurors with a proper instruction about discussing the case with others. It is also apparent that Nelson did not request such an instruction, nor did he object to the court's failure to instruct the jury about their conduct. Moreover, we have been made aware of no evidence that any juror discussed this case with anyone outside of the courtroom or with other jurors before deliberation.

To assure that jurors properly carry out their role as factfinders in a trial, the trial judge must instruct them on the nature of their task, its limitations, and proper conduct while serving as jurors. It is accordingly customary to advise jurors at the beginning of trial that they are the factfinders, that they will apply those facts to the law given to them by the court, and that they are to find those facts solely from evidence presented to them in the courtroom. And to assure that the jury's verdict is rendered solely on the facts presented in the court and from deliberation of only the jurors sworn to hear the case, the jury must be instructed in substance:

> I instruct you that during the trial you are not to discuss the case with anyone or permit anyone to discuss it with you. Until you retire to the jury room at the end of the case to deliberate on your verdict, you simply are not to talk about this case.

In this case no such prophylactic instruction was given. While Nelson argues for the first time on appeal that he should receive a new trial because of its omission, he forfeited the error at trial by not raising it. And rather than arguing now that prejudice resulted, he maintains that the error was fundamental and that he is entitled to a new trial without demonstrating any prejudice, referring us to United States v. Williams, 635 F.2d 744, 745-46 (8th Cir. 1980).

5

Federal Rule of Criminal Procedure 52(b) provides that we may correct error that was forfeited during trial so long as the error was "plain" and "affect[s] substantial rights." See United States v. Olano, 507 U.S. 725, 732 (1993). And we should not exercise the discretion to correct such plain error unless it "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." Id. (citations and internal quotation omitted). To demonstrate that plain error affected substantial rights, a defendant must carry the burden of persuading the court that the error affected the outcome of the trial. Id.

In this case, Nelson argues that prejudice must be presumed because the error was of a category that deprives the defendant of basic protections without which "a criminal trial cannot reliably serve its function as a vehicle for determination of guilt or innocence." Arizona v. Fulminante, 499 U.S. 279, 310 (1991) (quoting Rose v. Clarke, 478 U.S. 570, 577-78 (1986)).

We cannot agree that the error in this case was so fundamental as to require a new trial regardless of the error's effect. The rule requiring district courts to instruct jurors is a prophylactic measure. If a prophylactic instruction is not given but the harm that it was designed to forestall never occurs, it would be pointless to order a new trial simply to have the instruction given. This conclusion is consistent with the analogous holding by the Supreme Court in Olano, where the Court found harmless the error of allowing an alternate juror to be present with the jury during deliberations. In refusing to require a new trial in that circumstance, the Supreme Court noted:"If no harm resulted from this intrusion of an alternate juror into the jury room, reversal would be pointless." Olano, 507 U.S. at 738 (quoting United States v. Watson, 669 F.2d 1374, 1391 (11th Cir. 1982)).

While our conclusion may be at odds with the Eighth Circuit's holding in Williams, we note that the Eighth Circuit decided that case before the Supreme Court's decision in Olano. In concluding that the error in failing to instruct the jury about discussions outside the court should be reviewed for prejudicial impact, we join the Seventh and Fifth Circuits. See United States v. Davis, 15 F.3d 1393, 1410 (7th Cir.), cert. denied, 115 S. Ct. 250 (1994); Rotolo v. United States, 404 F.2d 316, 317 (5th Cir. 1968).

6

Since Nelson has failed to carry his burden of persuading us that the district court's error was prejudicial, we conclude that the district court's error in failing to instruct the jury about its conduct during trial was harmless.

III

Finally, Nelson contends that the district court abused its discretion in dismissing two jurors during trial because their travel plans potentially conflicted with jury deliberations. He contends that the district court "had no evidence before it which justified the dismissal of two African American jurors without some investigation into possible alternatives."

On the morning of the fourth day of trial, Thursday, December 22, 1994, the district court received notes from two jurors that they had holiday travel plans beginning the next day, Friday, December 23. Concerned that the jurors would feel pressure to render a verdict quickly, the court solicited views from the parties on whether to replace the two jurors with alternates. While the government attorney agreed to substitute the alternates, counsel for the defendant expressed the preference that the jury remain as constituted. The defendant suggested that the jury be allowed to separate during the few days that the two jurors were traveling and resume the case on December 29. The court expressed its preference, however, to have the jury deliberate on consecutive days, if possible. Noting that both of the jurors concerned were black and expressing its sensitivity to the racial composition of the jury, the court determined that it would be prudent to speak with both jurors about their travel plans before making its decision.

The first juror informed the court that she and her husband would be leaving at the end of the day on December 23 to take a long-planned yearly trip to Virginia and North Carolina and that they would be gone from December 23 through December 28. The second juror informed the court that he had an airline ticket to leave for Atlanta the next day and would need to leave at about noon. He stated that he would return December 27. The court concluded that to keep the jurors on the case would place pressure on them to reach a verdict in time to meet their travel plans and accordingly replaced them with

7

the alternates. The court noted that even though it was excusing two black jurors, four black jurors remained.

The jury as reconstituted with the two alternate jurors began its deliberations on December 22 and later that afternoon reached a guilty verdict.

Nelson contends that (1) the court did not have adequate information to reach the conclusion that the jury would feel rushed to reach a verdict and (2) even if there were such evidence, that the court failed, particularly in light of the race of the two jurors, to explore reasonable alternatives before substituting alternate jurors.

A defendant has a reasonable expectation that, barring unforeseen circumstances, he will be tried by the jury selected. The trial judge is not at liberty to interfere with the jury selected unless it has adequate cause. Federal Rule of Criminal Procedure 24(c) provides that alternate jurors shall replace jurors who, before deliberation commences, "become or are found to be unable or disqualified to perform their duties." While the court's decision to replace a juror with an alternate juror must be for a legally relevant reason and have a factual basis, its judgment to do so is reviewed for abuse of discretion. See United States v. Hayden, 85 F.3d 153, 156-57 (4th Cir. 1996) (reviewing for abuse of discretion a refusal to grant mistrial, instead replacing juror with alternate); United States v. Acker, 52 F.3d 509, 515 (4th Cir. 1995) (reviewing for abuse of discretion a decision to dismiss juror and proceed with eleven). A finding that a district court acted on an irrelevant legal basis or lacked factual support for the conclusion that a juror was unable or disqualified to perform his duty amounts to a finding that the court abused its discretion. To obtain a new trial, however, the objecting party must nevertheless establish prejudice.

In this case the district court was presented with facts during trial indicating that two jurors would be required to depart on holiday travel during the next day. With reasonable foresight, the court concluded that the jury, confronted with that type of schedule, might be influenced by the pressure of completing deliberations and reaching a verdict before it became time for two jurors to leave. While it is undoubtedly true that the court could have considered other alternatives to further the important goal of keeping the original jury

8

together, in this case it considered all those suggested by the defendant and rejected them.

Nelson suggested first that two alternate jurors deliberate with the jury and be impaneled as regular jurors only as it might become necessary. The district court rejected that alternative because it was contrary to Federal Rule of Criminal Procedure 24(c) and the holding in Olano, 507 U.S. at 737. Nelson also suggested that the court could require the jury to deliberate into the evening of December 22. But the court rejected that idea because it had earlier announced a schedule on which another juror had relied in making plans for the evening of December 22. Moreover, the pressure to reach a verdict that evening to enable the two jurors to leave the next day would not be substantially minimized. Finally, Nelson suggested that the court adjourn trial until the two jurors returned after December 28. The court considered that possibility but concluded that "it's much better to have the jury deliberate on consecutive days, if we can do it."

While we reaffirm the importance of keeping the originally selected jury together, that right to have the selected jury render the verdict is not absolute and is subject to the inevitable vagaries of the many trial participants' complex lives. In the circumstances of this case, we cannot conclude that the district court abused its discretion.

Nelson argues that the court's standard for replacing juries should be heightened in the circumstances of this case because two black jurors were being replaced with two white jurors. Nelson makes no claim, however, that the court acted in any respect because of the race of either the replaced jurors or the alternate jurors. Although the trial court candidly said that it was "sensitive to the issue," it correctly noted that "no defendant has any entitlement to a jury composed of individuals from any given race." Cf. Batson v. Kentucky, 476 U.S. 79, 85-86 (1986) (holding that while a defendant has no right to a jury composed of persons of his own race, he does have a right to a jury selected without racial discrimination). It was only coincidence that two jurors having travel plans happened to be black and that the next two alternates were white. In the absence of any evidence or allegation that the court acted because of race in replacing jurors with alternates, we find no basis to conclude that the court's discretion should

9

be exercised differently when it is considering for racially neutral reasons the replacement of black jurors with white alternates.

For the reasons given, we accordingly affirm the judgment of the district court.

AFFIRMED

10