**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 03-4591**

---

UNITED STATES OF AMERICA,

                                        Plaintiff - Appellee,

        versus

REGINALD HATCHER,

                                        Defendant - Appellant.

---

**No. 03-4592**

---

UNITED STATES OF AMERICA,

                                        Plaintiff - Appellee,

        versus

JOWANNA LAQUETTA BROWN,

                                        Defendant - Appellant.

---

**No. 03-4593**

---

UNITED STATES OF AMERICA,

                                        Plaintiff - Appellee,

        versus

CORNELIA SAULTER,

                                    Defendant - Appellant.

                        ───────────────

                        **No. 03-4602**

                        ───────────────

UNITED STATES OF AMERICA,

                                    Plaintiff - Appellee,

        versus

JOHN EDWARD KIRK,

                                    Defendant - Appellant.

                        ───────────────

                        **No. 03-4804**

                        ───────────────

UNITED STATES OF AMERICA,

                                    Plaintiff - Appellee,

        versus

GENE ANTHONY BROWN, SR.,

                                    Defendant - Appellant.

                        ───────────────

Appeals from the United States District Court for the Eastern District of North Carolina, at Wilmington. James C. Fox, Senior District Judge. (CR-02-22-FO)

                        ───────────────

2

Argued: March 7, 2005                    Decided: May 27, 2005

---

Before WILKINS, Chief Judge, and WILLIAMS and TRAXLER, Circuit Judges.

---

Affirmed in part, vacated in part, and remanded with instructions by unpublished opinion. Chief Judge Wilkins wrote the opinion, in which Judge Williams and Judge Traxler joined.

---

**ARGUED:** Lyle Joseph Yurko, Charlotte, North Carolina; Sofie Wonderly Hosford, HOSFORD & HOSFORD, Wilmington, North Carolina; William Lee Davis, III, Lumberton, North Carolina; Terence Lee Taylor, Greenville, North Carolina; Edwin Love West, III, Wilmington, North Carolina, for Appellants. Christine Witcover Dean, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee. **ON BRIEF:** Frank D. Whitney, United States Attorney, Anne M. Hayes, Assistant United States Attorney, Raleigh, North Carolina, for Appellee.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

3

WILKINS, Chief Judge:

Gene Brown, Sr., Jowanna Brown, Reginald Hatcher, John Kirk, and Cornelia Saulter (collectively, "Appellants") appeal their convictions and sentences for multiple counts of money laundering and, in the case of Gene Brown, for two drug offenses. We find no reversible error in and therefore affirm Appellants' convictions. However, in light of United States v. Booker, 125 S. Ct. 738 (2005), we find plain error in sentencing, exercise our discretion to notice the error, vacate the sentences, and remand to the district court for resentencing.[1]

I.

This case arises out of Appellants' participation in a money laundering scheme led by two drug dealers, Antwand Brown (Antwand) and Dion Saulter (Dion). Antwand and Dion acquired large amounts of money by dealing drugs, and they enlisted Appellants' help in laundering the money. In various capacities, Appellants helped Antwand and Dion purchase expensive vehicles with the money, trade in those vehicles for less expensive models, and thereby obtain a laundered profit. A federal grand jury returned a multiple-count indictment naming Appellants as participants in the scheme. Tried together before a jury, Appellants were convicted on multiple

---

[1]We do not vacate Gene Brown's sentence because he did not challenge it on appeal.

4

counts of money laundering, see 18 U.S.C.A. §§ 1956, 1957 (West 2000 & Supp. 2005), and Gene Brown was convicted additionally of two drug offenses, see 21 U.S.C.A. §§ 846, 856 (West 1999 & Supp. 2005). Gene Brown was sentenced to 166 months' imprisonment, Jowanna Brown was sentenced to 78 months' imprisonment, Saulter was sentenced to 51 months' imprisonment, and Hatcher and Kirk were each sentenced to 41 months' imprisonment. This consolidated appeal followed.

## II.

We first address the issues raised by Appellants regarding their convictions. They argue that the district court abused its discretion by dismissing a juror after trial began and by instructing the jury on willful blindness. They also maintain that the evidence admitted against them was insufficient to support their convictions. Jowanna Brown, Kirk, and Saulter contend additionally that the district court abused its discretion by not severing their trials from the trials of Gene Brown and Hatcher. We address these arguments in turn.

### A. Dismissal of a Juror

On the second day of trial, a juror (Juror A) told the district court that two or three years before the trial he had engaged in business with one of Antwand's companies. The district court immediately informed the parties that it was considering dismissing Juror A but that it would wait until the end of trial to

5

make the decision. The court also told the parties that upon the close of the evidence it would grant a motion to dismiss Juror A if any party filed one. None of the parties objected to this procedure at the time.

During the course of the trial, evidence was introduced relating to the company with which Juror A had engaged in business. At the close of the evidence, the Government asked the district court to dismiss Juror A. Over Appellants' objection, the district court dismissed Juror A and replaced him with an alternate. Appellants now argue that the district court abused its discretion by not conducting a hearing or making factual findings before it dismissed Juror A.

"A defendant has a reasonable expectation that, barring unforeseen circumstances, he will be tried by the jury selected." United States v. Nelson, 102 F.3d 1344, 1349 (4th Cir. 1996). However, under Rule 24(c)(1) of the Federal Rules of Criminal Procedure, the district court must replace jurors who become disqualified or unable to perform their duties before deliberation commences. See id. at 1349. The district court determines, in its discretion, whether adequate cause exists to dismiss jurors. See id. We will find an abuse of discretion only if the dismissal of the juror rested "on an irrelevant legal basis or lacked factual support." Id. And, even if the district court abuses its

discretion in dismissing a juror, "the objecting party must nevertheless establish prejudice" resulting from that abuse.  Id.

Here, the district court did not abuse its discretion in finding adequate cause to dismiss Juror A.  Juror A told the court that he had engaged in business with one of the companies owned by a central figure in the trial, and he indicated that he did not want to be in a position that might affect his objectivity.  The district court noted these facts on the record and based its ultimate decision to dismiss Juror A on these facts.  To exercise its discretion properly, the court did not need to conduct a hearing on whether cause was present.  See United States v. Virgen-Moreno, 265 F.3d 276, 288 (5th Cir. 2001) ("The district court was not required to conduct an evidentiary hearing [regarding the dismissal of a juror], and the scope of the court's investigation is within its sound discretion.").

In any event, Appellants cannot demonstrate prejudice resulting from the dismissal of Juror A.  Appellants assert that they "were prejudiced by the removal of [Juror A]" because he "was receptive and attentive to the defendants' contentions and arguments."  Consol. Br. of Appellants at 24.  But, Appellants proffer no basis for this assertion; it is mere speculation, which is not sufficient to demonstrate prejudice, see United States v. Krout, 56 F.3d 643, 647 (5th Cir. 1995) (refusing to find prejudice when the defendant "simply state[d] a 'belief' that the excused

7

juror was favorable to his case"). Therefore, the dismissal of Juror A does not warrant reversal of Appellants' convictions.[2]

B. <u>Evidence Sufficiency and Willful Blindness Instruction</u>

Appellants also challenge the sufficiency of the evidence supporting their convictions and the propriety of a jury instruction given by the district court. In considering a sufficiency challenge, our role is limited to considering whether "there is substantial evidence, taking the view most favorable to the Government, to support" the verdict. <u>Glasser v. United States</u>, 315 U.S. 60, 80 (1942). When "the evidence supports different, reasonable interpretations, the jury decides which interpretation to believe." <u>United States v. Beidler</u>, 110 F.3d 1064, 1067 (4th Cir. 1997) (internal quotation marks omitted). Therefore, we will only overturn a verdict on grounds of evidence sufficiency "where the prosecution's failure is clear." <u>Burks v. United States</u>, 437 U.S. 1, 17 (1978).

---

[2]On the fifth day of trial, another juror (Juror B) told the district court that he had engaged in business with one of the witnesses at trial. The district court did not immediately dismiss Juror B, but on the following day the court dismissed him for an unrelated personal reason. Appellants argue that the district court treated Juror B differently from Juror A because the court immediately told the parties that it would dismiss Juror A upon motion by any party at the close of the evidence, but it did not say the same about Juror B. We disagree. After Juror B told the district court of his association with the witness, the court gave the parties an opportunity to move for his dismissal. Before any party took action, Juror B was dismissed for a reason unrelated to his association with the witness, and neither party challenges that basis for his dismissal. Thus, there is no evidence that the district court treated the two jurors differently.

To sustain a conviction for money laundering under § 1956, the Government must prove

> (1) that the defendant conduct[ed] a financial transaction with at least a <u>de minimis</u> effect on interstate commerce; (2) that the transaction involved the proceeds of a specified unlawful activity; (3) that the defendant knew that those proceeds were derived from that specific unlawful activity; and (4) that the defendant engaged in the transaction intending to promote that unlawful activity.

<u>United States v. Bollin</u>, 264 F.3d 391, 408 (4th Cir. 2001) (internal quotation marks omitted). Here, with respect to the third element--termed the "guilty knowledge" requirement, <u>e.g.</u>, <u>United States v. Navarro</u>, 145 F.3d 580, 587 (3d Cir. 1998) (internal quotation marks omitted); <u>United States v. Holmes</u>, 44 F.3d 1150, 1155 (2d Cir. 1995)--the district court instructed the jury that it could infer guilty knowledge from a defendant's actions if it found "beyond a reasonable doubt that he or she strongly suspected that the described property represented the proceeds of unlawful activity, and deliberately closed his or her eyes to the existence of that fact in an attempt to avoid criminal liability." J.A. 2299. This is known as a "willful blindness" instruction, which "allows the jury to impute the element of knowledge to the defendant if the evidence indicates [he] purposely closed his eyes to avoid what was taking place around him." <u>United States v. Withers</u>, 100 F.3d 1142, 1145 (4th Cir. 1996) (internal quotation marks omitted).

9

Citing cases from other circuits, Appellants argue that a willful blindness instruction was inappropriate here because "the facts point[ed] to actual knowledge rather than deliberate ignorance," United States v. Mapelli, 971 F.2d 284, 286 (9th Cir. 1992), or because the evidence did not indicate that the defendants deliberately remained ignorant for the specific purpose of establishing a defense to future prosecution, see United States v. Baron, 94 F.3d 1312, 1318 n.3 (9th Cir. 1996). However, settled circuit precedent instructs that "a willful blindness instruction is appropriate" even "when there is evidence of both actual knowledge and deliberate ignorance." United States v. Schnabel, 939 F.2d 197, 204 (4th Cir. 1991); accord United States v. Ruhe, 191 F.3d 376, 384 (4th Cir. 1999) ("If the evidence supports both actual knowledge on the part of the defendant and deliberate ignorance, a willful blindness instruction is proper."). Specifically, we have permitted a willful blindness instruction in a money laundering case such as this one. See United States v. Campbell, 977 F.2d 854, 857 (4th Cir. 1992). Moreover, "this circuit has never adopted the Ninth Circuit's additional requirement that the government prove that the defendant's ignorance was for the purpose of providing a defense in case of prosecution." Ruhe, 191 F.3d at 385.

To establish the element of guilty knowledge, therefore, the Government had to introduce evidence from which a reasonable juror

could conclude that Appellants at least deliberately ignored the illicit source of the funds used in the transactions. We conclude that the evidence introduced against each of the Appellants was sufficient to sustain their convictions.

### 1. Jowanna Brown

Jowanna Brown, Antwand's sister, argues that the Government failed to prove guilty knowledge because the evidence showed that Antwand and Dion misled her into believing that the funds used in the transactions were actually the proceeds of legitimate business ventures, including a rap music show, a nightclub, a recording studio, an automobile business, a pay phone business, and a trucking company. "At best," Jowanna Brown argues, she "was guilty of mistaken reliance on the trustworthiness of her family." Consol. Br. of Appellants at 32.

However, the Government introduced evidence showing that Jowanna Brown had helped Antwand conceal his drug money in the past, that she and Dion shared an apartment in the same complex where Antwand lived while the scheme was ongoing, and that during that time she paid expenses that were grossly disproportionate to her income. The Government also introduced evidence that she was present when Dion paid for a Lexus using a six-inch-thick "wad of cash." J.A. 1502. From this evidence, a reasonable juror could conclude that Jowanna Brown knew of the illicit source of the funds used in the transactions, or at least that she deliberately ignored

11

their illicit source.  We therefore reject her argument that the Government failed to prove guilty knowledge.

## 2.  John Kirk

Like Jowanna Brown, Kirk, Antwand's stepfather, argues that the Government did not prove guilty knowledge--i.e., "that [he] knew the vehicles that he agreed to title in his name were the proceeds of illegal drug sales."  Consol. Br. of Appellants at 30. "Given [the] impressive 'front' posed by Antwand," Kirk argues that he need not have suspected that Antwand was dealing drugs.  Id. at 31.

However, the Government introduced ample evidence to permit the jury to disagree with Kirk's contention.  First, and most basically, the Government introduced evidence that Kirk permitted vehicles purchased by Antwand to be titled in Kirk's name.  A jury could infer that, if Antwand had used money from legitimate sources to purchase the vehicles, there would have been no reason for him to title the vehicles in Kirk's name.  Additionally, the evidence showed that Antwand asked Kirk to help him lease or obtain financing for the vehicles.  If Antwand indeed made large sums of money from legitimate sources, as he had apparently represented to Kirk, he would not have needed help from Kirk to finance the purchases.  Finally, the evidence showed that Kirk personally received checks for the profit from the trade-ins, and rather than endorsing the checks to Antwand, Kirk personally cashed them and

12

delivered the cash to Antwand. From this evidence, the jury could reasonably conclude that Kirk knew of the illicit foundation of the scheme, or at least deliberately ignored it.

Additionally, Kirk argues that the Government failed to prove that he intended to conceal the unlawful activity that funded the transactions. See United States v. Villarini, 238 F.3d 530, 533 (4th Cir. 2001) ("To establish the fourth element [under § 1956], the Government must prove a specific intent to conceal."). He notes that his participation in the scheme included signing and publicly filing two powers of attorney to assist Antwand in buying vehicles in Kirk's name, and he suggests that "[a] man of [his] education would know that power of attorney documents ... are open for public viewing." Consol. Br. of Appellants at 31. Kirk argues that his participation in the scheme was very much public, which belies an intent to conceal.

However, the Government points out that Kirk's public filing of powers of attorney helped to conceal the fact that it was actually Antwand, not Kirk, who was supplying the money for the transactions. Both powers of attorney indicated that the documents were intended to empower Antwand to transfer Kirk's vehicles, making it appear as if Kirk, not Antwand, was the original source of the vehicles. From this evidence the jury could infer that Kirk intended to conceal Antwand's unlawful activity that funded purchase of the vehicles.

13

### 3. Cornelia Saulter

Saulter, Dion's mother, first argues that the Government failed to prove guilty knowledge on her part. She notes that "considerable evidence was presented tending to show that Dion ... gave the appearance that he was involved with various money producing, non drug related activities," and she states that "[t]he law does not require that a mother believe the worst about her son." Id. at 34. However, the Government introduced ample evidence to permit the jury to find guilty knowledge on the part of Saulter. There was testimony that she signed powers of attorney to enable Dion to purchase vehicles in her name and that she even obtained a blank, notarized power of attorney to afford Dion more flexibility in carrying out the scheme. And, the evidence showed that she obtained insurance for the vehicles as they were placed in her name, once referring in an insurance document to a vehicle Dion had purchased as "my car," J.A. 1605, thus concealing the true ownership of the vehicle. From this evidence, the jury could reasonably find that Saulter possessed guilty knowledge.

Saulter also argues that the Government failed to prove intent to conceal. See Villarini, 238 F.3d at 533. She, like Kirk, points to the fact that she signed and publicly filed powers of attorney, and she adds that she openly obtained insurance for the vehicles in her name. These actions, she maintains, "are hardly the actions of someone concealing anything." Consol. Br. of

14

Appellants at 35. This argument misses the point. Saulter's public filing of the powers of attorney and insurance documents in her name helped Dion conceal the proceeds of his drug dealing. We believe, therefore, that the Government sufficiently proved intent to conceal on Saulter's part.

### 4. Reginald Hatcher

Like the Appellants before him, Hatcher, a friend of Antwand and Dion, argues that the evidence was insufficient to prove that he knew of the illicit nature of the scheme. However, the Government introduced evidence that he permitted Antwand and others to manufacture cocaine base at his house in exchange for small amounts of the finished product. Further, the evidence showed that Hatcher believed Antwand was a drug dealer because he had observed Antwand's money and new vehicles, and when Hatcher was having financial troubles, Antwand would pay his bills and offer additional cash in exchange for Hatcher's agreement to purchase vehicles using Antwand's drug money. The evidence indicated that on one occasion, Hatcher used $47,000 in cash supplied by Antwand to purchase a Cadillac Escalade, the title for which Antwand later placed in his aunt's name. From this evidence the jury could reasonably conclude that Hatcher was at least aware that the money used in the Escalade transaction was the product of illegal drug sales.

Hatcher, who was convicted of engaging in a transaction in criminally derived property valued at more than $10,000, see 18 U.S.C.A. § 1957(a),[3] also argues that an impermissible variance occurred between the violation alleged in the indictment and the evidence introduced against him at trial.  Specifically, Hatcher points to Count 17 of the indictment, which alleged that Hatcher and a woman named Charlene Brown Hall violated § 1957(a) by purchasing the Escalade with Antwand's cash.  At trial, however, the evidence indicated that Hall did not participate in the transaction, and the charges against her were dismissed.  Hatcher argues that this variance warrants reversal of his conviction for violating § 1957(a).  We disagree.

"When a defendant is convicted of charges not included in the indictment, an amendment has occurred which is per se reversible error."  United States v. Fletcher, 74 F.3d 49, 53 (4th Cir. 1996). In contrast, "[w]hen the evidence at trial differs from what is alleged in the indictment, then a variance has occurred," which "violates a defendant's rights and requires reversal only if it prejudices him."  Id.  Prejudice results "only when the variance

---

[3]Section 1957(a) is designed to "make the drug dealers' money worthless" by criminalizing transactions in which the participants knowingly give or accept money derived from unlawful activity. H.R. Rep. No. 99-855, at 13 (1986) (internal quotation marks omitted).  Though similar to § 1956, § 1957 is broader because it criminalizes transactions without requiring proof of intent to conceal the underlying unlawful activity.  See United States v. Allen, 129 F.3d 1159, 1164-65 (10th Cir. 1997) (discussing the differences between § 1956 and § 1957).

16

either surprises the defendant at trial and hinders the preparation of his defense, or exposes him to the danger of a second prosecution for the same offense." United States v. Redd, 161 F.3d 793, 795 (4th Cir. 1998) (alterations & internal quotation marks omitted). "As long as the proof at trial does not add anything new or constitute a broadening of the charges, then minor discrepancies between the Government's charges and the facts proved at trial generally are permissible." Fletcher, 74 F.3d at 53. Therefore, if "the indictment provides the defendant with adequate notice of the charges against him and is sufficient to allow the defendant to plead it as a bar to subsequent prosecutions, a variance in proof at trial will not prejudice the defendant." Redd, 161 F.3d at 795-96 (footnote omitted).

Here, there is no question that the indictment put Hatcher on notice of the § 1957(a) charge, and the lack of evidence that Hall was also present when the offense occurred did not affect an essential element of the § 1957(a) offense. See id. at 796 (finding no prejudice "when the alleged variance [did] not affect an essential element of the offense"). Whether Hall was present or not, the evidence showed that Hatcher "knowingly engage[d] ... in a monetary transaction in criminally derived property of a value greater than $10,000." 18 U.S.C.A. § 1957(a). The minor variance between the indictment and the evidence does not warrant reversal of his conviction.

17

### 5. Gene Brown, Sr.

Gene Brown, Antwand's father, was convicted of conspiracy to distribute and possess with intent to distribute controlled substances, see 21 U.S.C.A. § 846; maintaining a place for the distribution of controlled substances, see 21 U.S.C.A. § 856(a)(1); and conspiracy to launder money, see 18 U.S.C.A. § 1956(h). We address the sufficiency of the evidence supporting the drug and money laundering convictions separately.

### a. Drug Convictions

To sustain a conviction for conspiracy to distribute and possess with intent to distribute, the Government must prove that (1) an agreement to distribute and possess with intent to distribute existed between two or more persons, (2) the defendant knew of the conspiracy, and (3) the defendant knowingly and voluntarily became a part of it. See United States v. Burgos, 94 F.3d 849, 857 (4th Cir. 1996) (en banc). Here, it is undisputed that an agreement to distribute and to possess with intent to distribute existed between Antwand and Dion. Gene Brown argues only that the evidence was insufficient to prove that he was "someone who [was] deeply involved in a conspiracy to sell drugs." Consol. Br. of Appellants at 63. But, Gene Brown misapprehends the quantum of evidence necessary to support a conviction under § 846: "[O]nce it has been shown that a conspiracy exists, the evidence

18

need only establish a slight connection between the defendant and the conspiracy to support conviction." Burgos, 94 F.3d at 861 (internal quotation marks omitted). Therefore, the Government needed only to establish a slight connection between Gene Brown and the scheme of Antwand and Dion. And, to convict him under § 856, the Government had to prove that he "(1) knowingly, (2) operated or maintained a place, (3) for the purpose of manufacturing, distributing, or using any controlled substance." United States v. Pineiro, 389 F.3d 1359, 1367 (11th Cir. 2004) (internal quotation marks omitted); accord United States v. Soto-Silva, 129 F.3d 340, 345 (5th Cir. 1997).

Here, the Government introduced evidence that Antwand and Dion stored drugs in vehicles that they parked on Gene Brown's property and that they sold drugs in close proximity to him. Testimony showed that Gene Brown would drive people from location to location to purchase cocaine base. The evidence further showed that inside Gene Brown's house, Antwand kept a safe from which he would retrieve $20,000 to $40,000 at a time to pay his drug supplier. Gene Brown was often at home when these payments were being made. In fact, when Gene Brown's home was later searched, agents found cocaine and cocaine base inside the safe. There was also testimony that Gene Brown had remarked that his sons needed to stop selling drugs and invest their money in something legal, and there was evidence that one of his sons stored drugs in his garage. From

19

this evidence the jury could reasonably find the necessary elements to sustain Gene Brown's convictions under § 846 and § 856.

b.  <u>Money Laundering Conviction</u>

With respect to his conviction for conspiracy to launder money, Gene Brown argues that the Government failed to prove guilty knowledge on his part, offering that "it is not unusual for a parent to assist their children when buying automobiles and obtaining insurance." Consol. Br. of Appellants at 36. He contends that Antwand and Dion misrepresented the source of the money for the automobiles, and "[t]he family members had no reason to believe otherwise." <u>Id.</u>  However, the Government introduced evidence that he had artfully structured multiple $9,000 deposits into, and withdrawals from, his and others' accounts to help Antwand pay for the vehicles without being detected. <u>See</u> <u>Villarini</u>, 238 F.3d at 533 (holding that series of strategically small deposits "gives rise to a reasonable inference that the transactions were designed to avoid suspicion or to give the appearance ... [of] a legitimate cash income stream"). The evidence also showed that he had executed powers of attorney to enable Antwand to purchase several vehicles in his name. Further, the Government introduced evidence of large discrepancies between the income reported on Gene Brown's tax returns and the actual deposits into his bank accounts. From this evidence and the evidence introduced in support of his drug convictions, the jury

20

could reasonably find sufficient evidence to convict him of conspiracy to launder money.

### C.   Motions to Sever

Jowanna Brown, Kirk, and Saulter argue that the district court erred by failing to sever their trials from those of their codefendants.  "There is a preference in the federal system for joint trials of defendants who are indicted together."  Zafiro v. United States, 506 U.S. 534, 537 (1993).  Under Rule 14 of the Federal Rules of Criminal Procedure, "a district court should grant a severance ... only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence."  Id. at 539.  The potential "spillover effect" of evidence admitted against codefendants does not require severance per se.  United States v. Najjar, 300 F.3d 466, 473 (4th Cir. 2002).  Rather, the district court is vested with discretion to determine whether cause exists for severance.  See id.  To demonstrate that the district court abused its discretion, the defendant "must establish that actual prejudice would result from a joint trial, and not merely that a separate trial would offer a better chance of acquittal."  United States v. Reavis, 48 F.3d 763, 767 (4th Cir. 1995) (citation, alteration, & internal quotation marks omitted).

Here, in addition to determining that a joint trial would not pose serious risks of prejudice to the defendants, the district court gave a limiting instruction to the jury at the outset of the trial: "Each [defendant] is entitled to your separate consideration, and you are not to think of them as a group.... [Y]ou must make a separate determination as to whether or not the government proved each defendant's guilt beyond a reasonable doubt." J.A. 412-13. Such an instruction can cure even actual prejudice. Cf. Najjar, 300 F.3d at 475 ("To the extent there was any actual prejudice suffered by [the defendant] by any conflict in the defenses, we think that the district judge cured such conflict by proper limiting instructions."). Nevertheless, Jowanna Brown, Kirk, and Saulter argue that the decision of the district court to try Appellants jointly warrants reversal of their convictions. We address each of their arguments separately.

### 1. John Kirk

Kirk did not raise this issue in the district court, so we review the district court decision with respect to him for plain error. See Fed. R. Crim. P. 52(b); United States v. Olano, 507 U.S. 725, 731-32 (1993). To demonstrate plain error, Kirk must show "an error that is plain and that affects substantial rights." Olano, 507 U.S. at 732 (alteration & internal quotation marks omitted).

22

Kirk argues that the district court should have severed his trial from that of his codefendants because "[h]e was the least culpable of all of the co-defendants," and, "[a]s a result, the jury might have convicted [him] based upon evidence incriminating his co-defendants." Consol. Br. of Appellants at 42 (emphasis added). However, such bare speculation is not sufficient to show that the district court abused its discretion. See United States v. Becker, 585 F.2d 703, 707 (4th Cir. 1978) ("Speculative allegations as to possible prejudice do not meet the burden of showing an abuse of discretion in denying a motion for severance."). We therefore reject Kirk's argument.

## 2. Jowanna Brown

Jowanna Brown did raise this issue in the district court. Our review is therefore for abuse of discretion. She advances a similar argument regarding prejudice as the argument advanced by Kirk: that the district court should have severed her trial because "the jury might have convicted Ms. Brown based upon evidence incriminating her co-defendants." Consol. Br. of Appellants at 43 (emphasis added). As noted above, such speculation is not sufficient to demonstrate an abuse of discretion. We therefore reject her argument.

## 3. Cornelia Saulter

Saulter also raised this issue in the district court, so our review is for abuse of discretion. She argues that "the taint from

23

evidence against Gene Brown, Sr. could not help but prejudice [her]," id. at 44 (emphasis added), adding that "[she] was prejudiced because the evidence regarding her 'knowledge' of drug activity was weak," id.  As noted above, mere allegations of spillover effect are not themselves enough to demonstrate an abuse of discretion.  See Najjar, 300 F.3d at 473.  We therefore reject Saulter's argument.

                              III.

     We now turn to the issues raised by Appellants regarding their sentences.  Appellants, with the exception of Gene Brown, argue that their sentences violated their Sixth Amendment right to a jury trial.  See U.S. Const. amend. VI.  In addition, Saulter argues (1) that the district court miscalculated her prescribed guideline sentence by improperly holding her accountable for the value of certain vehicles, and (2) that the decision of the district court not to depart downward when calculating her guideline sentence is reviewable and should be reversed.  As detailed below, we conclude that the district court plainly erred when it imposed sentences that exceeded the maximum authorized by the jury verdict alone, and we vacate those sentences and remand for resentencing.  We also conclude that the district court lacked an adequate factual basis, at least on the record before us, to attribute the amount that it did to Saulter's participation in the scheme.  We reject, however,

                               24

Saulter's argument that the district court decision not to depart downward is reviewable.

A.  Sixth Amendment Challenges

Appellants argue that under United States v. Booker, 125 S. Ct. 738 (2005), the district court erred by imposing sentences that exceeded the maximum authorized by the jury verdict alone.  Because Appellants did not raise this issue in the district court, our review is for plain error.  See Fed. R. Crim. P. 52(b); Olano, 507 U.S. at 731-32.  To establish plain error, Appellants must show that an error occurred, that the error was plain, and that the error affected their substantial rights.  See Olano, 507 U.S. at 732.  If they can make such a showing, correction of the error remains within our discretion, which we "should not exercise ... unless the error seriously affects the fairness, integrity or public reputation of judicial proceedings."  Id. (alteration & internal quotation marks omitted).

As we recently held in United States v. Hughes, 401 F.3d 540, 547-55 (4th Cir. 2005), a district court commits plain error that affects a defendant's substantial rights when, operating under a pre-Booker mandatory guidelines regime, it imposes a sentence that exceeds the maximum guideline sentence authorized by the jury verdict alone.  Here, the jury found Appellants guilty of money laundering, to which the guidelines assign a base Offense Level of 8, see United States Sentencing Guidelines Manual § 2S1.1(a)(2)

25

(2002). The guidelines also prescribe a two-level enhancement because Appellants were convicted of violating 18 U.S.C.A. § 1956. See U.S.S.G. § 2S1.1(b)(2)(B). Accordingly, the jury verdicts authorized an Offense Level of 10. As each Appellant was assigned a Criminal History Category of I, the maximum sentence authorized by the jury verdicts was 12 months' imprisonment. However, as noted above, Jowanna Brown was sentenced to 78 months' imprisonment, Saulter was sentenced to 51 months' imprisonment, and Hatcher and Kirk were sentenced to 41 months' imprisonment. The facts that gave rise to the enhancements resulting in these sentences were found by the district court, not by the jury. Therefore, under Hughes, the district court committed plain error and affected Appellants' substantial rights when it imposed these sentences. See Hughes, 401 F.3d at 547-55.[4]

We therefore have discretion to notice the prejudicial error committed by the district court. "Our discretion is appropriately exercised only when failure to do so would result in a miscarriage of justice, such as when the defendant is actually innocent or the error seriously affects the fairness, integrity or public reputation of judicial proceedings." United States v. Hastings, 134 F.3d 235, 244 (4th Cir. 1998) (alteration & internal quotation marks omitted). We conclude, as we did in Hughes, that exercise of

---

[4]We of course offer no criticism of the district judge, who followed the law and procedure in effect at the time of sentencing.

26

our discretion is warranted here. As a result of a plain and prejudicial Sixth Amendment error, Appellants were sentenced to terms of imprisonment several times as long as the maximum sentence authorized by the jury verdict. See Hughes, 401 F.3d at 555-56. Moreover, as in Hughes, "[t]he record does not provide any indication of what sentence the district court would have imposed had it exercised its discretion under § 3553(a), treating the guidelines as merely advisory." Id. at 556. Under these circumstances, we believe that failure to notice this error would seriously affect the fairness, integrity, or public reputation of judicial proceedings. See United States v. Ford, 88 F.3d 1350, 1356 (4th Cir. 1996) (noticing a plain, prejudicial sentencing error that would have caused the defendant to "serve a term of imprisonment three years longer than required by the sentencing guidelines"). We therefore exercise our discretion to notice the error and remand the cases of Jowanna Brown, Hatcher, Kirk, and Saulter for resentencing consistent with the instructions set forth in Hughes. See Hughes, 401 F.3d at 546.

B. Factual Foundation for Saulter Sentence

Saulter challenges the calculation of the amount of loss attributed to her participation in the money laundering scheme. Because the district court will have to consider her prescribed guideline sentence on remand, see id. ("[A] district court shall first calculate (after making the appropriate findings of fact) the

27

range prescribed by the guidelines."), we take this opportunity to address Saulter's challenge to the calculation of her sentence.

The district court calculated Saulter's guideline sentence based on a final offense level of 24 and imposed a sentence of 51 months. The final offense level of 24 was based in part on an enhancement of 8 levels to account for an amount laundered of $106,471.94, see U.S.S.G. § 2B1.1(b)(1)(E). This was the amount recommended in the presentence report prepared by the probation office and was calculated according to Saulter's association with five automobiles: a Lexus, a Land Rover, a 1997 Mercedes, a 2000 Mercedes, and a Cadillac. Saulter argues that there was insufficient evidence to hold her accountable for the Lexus, the 2000 Mercedes, and the Land Rover. Therefore, she argues, the amount of laundered funds for which she should be held accountable is $53,390 (corresponding to an enhancement of 6 levels, see id. § 2B1.1(b)(1)(D), for a final offense level of 22 (41-51 months)).

"Evidence underlying a district court's sentence is reviewed by viewing the evidence, and inferences drawn therefrom, in the light most favorable to the district court's determination." United States v. Bolden, 325 F.3d 471, 480 n.5 (4th Cir. 2003) (internal quotation marks omitted). We believe that there is sufficient evidence in the record to connect Saulter to the vehicles in question. As to the Lexus and Land Rover, Antwand and Dion obtained a $10,000 credit from the trade-in of the Lexus and

28

used that money in part to purchase the Land Rover in Saulter's name. Saulter then traded the Land Rover and the 1997 Mercedes for the 2000 Mercedes. Moreover, Saulter added the 2000 Mercedes to her insurance policy. Finally, Saulter sent a proof-of-loss letter to her insurance carrier referring to the 2000 Mercedes as "my car." J.A. 1605. This evidence is sufficient to tie Saulter to each of these vehicles.

However, based on our examination of the value of each of these automobiles as listed in the presentence report (and relied upon by the district court), we are unable to determine how the district court reached the final figure of $106,471.94. Specifically, the presentence report indicates that the 2000 Mercedes, purchased for $86,482.94, was paid for in the following way: (1) trade-in of the 1997 Mercedes and the Land Rover, together worth $85,000; and (2) cash payment of $1,482.94. Yet the presentence report calculated the amount of laundered money attributable to this transaction to be $33,182.00. We can find no basis in the record for this figure. It appears that, at most, the amount of money laundered through this transaction was $1,482.94. Indeed, based upon all the figures set forth in the presentence

report, we can conceive of no factual basis for the $33,182.00 figure attributed to this transaction.[5]  In light of this apparent ambiguity, the district court is instructed on remand to set forth with particularity the factual basis for its guideline calculations, paying especially close attention to the amount of money attributable to each transaction.

## C. Decision Not to Depart

Saulter also argues that we should review the decision of the district court not to depart downward when calculating her guideline sentence.  However, the record indicates that the district court was aware of its ability to depart downward, but it chose not to depart based upon its view of the merits.  Its decision not to depart is therefore unreviewable by this court. See United States v. Edwards, 188 F.3d 230, 238 (4th Cir. 1999) ("The only circumstance in which review of a district court's refusal to depart is available is when the district court mistakenly believed that it lacked the authority to depart." (alterations & internal quotation marks omitted)).

---

[5]At oral argument, counsel for the Government suggested that depreciation of the 1997 Mercedes and Land Rover had something to do with the figure.  This may be true, but nothing in the record so indicates.

30

IV.

For the reasons stated above, we affirm Appellants' convictions. However, we vacate the sentences of Jowanna Brown, Hatcher, Kirk, and Saulter and remand to the district court for resentencing.

<u>AFFIRMED IN PART, VACATED IN PART,</u>
<u>AND REMANDED WITH INSTRUCTIONS</u>