903 A.2d 467 (2006)
387 N.J. Super. 146
STATE of New Jersey, Plaintiff-Respondent,
v.
Adebowale OYENUSI, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Argued March 7, 2006.
Decided August 3, 2006.
*469 Lorraine Posner argued the cause for appellant (Alan Dexter Bowman, Newark, attorney; Mr. Bowman, of counsel and on the brief).
Leslie-Ann M. Justus, Deputy Attorney General, argued the cause for respondent (Zulima V. Farber, Attorney General, attorney; Ms. Justus, of counsel and on the brief).
Before Judges SKILLMAN, PAYNE and SABATINO.
The opinion of the court was delivered by
SKILLMAN, P.J.A.D.
The issue presented by this appeal is whether law enforcement officers may conduct a warrantless search of the contents of a container in the possession of an arrestee even if the arrestee no longer has access to the container when the search is conducted. We conclude that such a search, if conducted contemporaneously with the arrest, is a valid search incident to an arrest under both the Fourth Amendment to the United States Constitution and Article I, paragraph 7 of the New Jersey Constitution.
Defendant and his brother Babatunde Oyenusi were indicted on two counts of Medicaid fraud, in violation of N.J.S.A. 30:4D-17, N.J.S.A. 2C:2-6 and N.J.S.A. 2C:2-7; second-degree theft by deception, in violation of N.J.S.A. 2C:20-4, N.J.S.A. 2C:2-6 and N.J.S.A. 2C:2-7; second-degree misconduct by a corporate official, in violation of N.J.S.A. 2C:21-9c; and conspiracy to commit the foregoing offenses, in violation of N.J.S.A. 2C:5-2.
Codefendants moved to suppress evidence obtained in a search incident to Babatunde's arrest. After an evidentiary hearing, the trial court denied the motion. Codefendants were subsequently tried jointly, which resulted in a guilty verdict against defendant on all charges. Babatunde was acquitted of the charges.
The trial court sentenced defendant to concurrent five-year terms of imprisonment for theft by deception and misconduct *470 by a corporate official and a three-year concurrent term for one count of Medicaid fraud. The court also imposed a $75,000 fine and required defendant to pay the State $152,215 in restitution. The court merged defendant's other convictions.
The Medicaid fraud scheme that formed the basis of defendant's convictions consisted of submitting Medicaid claims for prescription drugs that were not actually dispensed. A confederate in this scheme, Morris Dicker, testified for the State that he entered into an arrangement with Babatunde and defendant, who was a registered pharmacist, under which he would supply them with fake prescriptions written on doctors' prescription pads and Medicaid cards obtained from Medicaid recipients, in exchange for prescription drugs or cash. The State presented other evidence, including expert testimony, to show that defendant used these fake prescriptions and Medicaid cards to submit thousands of fraudulent Medicaid claims.
The search that is the subject of this appeal was conducted on February 10, 1996 pursuant to a warrant for Babatunde's arrest. This warrant was not based on evidence of the Medicaid fraud scheme for which defendant was convicted, but instead on evidence of Babatunde's participation in the sale of stolen prescription drugs through pharmacies.
The arrest was made outside of Babatunde's Newark residence by Division of Criminal Justice investigators. At the time of Babatunde's arrest, he was carrying two white plastic bags. The arresting officers took the bags from Babatunde, placed handcuffs on him, and then looked inside the bags, which were not sealed or otherwise secured. One of the bags contained a typewriter, and the other a notebook, blank prescription pads, Medicaid eligibility cards under various names, and some prescriptions ostensibly written by doctors. The items found in the second bag were subsequently used by the State to prove defendant's involvement in the Medicaid fraud scheme.
At the suppression hearing,[1] one of the arresting officers was asked how much time elapsed between Babatunde's arrest and the examination of the contents of the bags, in response to which he said:
Not much. I mean, we arrested him out on the street, looked in the bags on the street. We did it all right there.
The trial court denied the motion to suppress, concluding that the examination of the contents of the plastic bags Babatunde was carrying constituted a valid search incident to his arrest. In reaching this conclusion, the court found that the arrest and handcuffing of Babatunde and the examination of the contents of the bags were "reasonably contemporaneous."
On appeal, defendant's only argument is that the trial court erred in denying the motion to suppress because the investigators' examination of the contents of the plastic bags Babatunde was carrying at the time of his arrest was not a valid search incident to the arrest. The State responds that defendant lacks standing to challenge the validity of the search because he did not have a reasonable expectation of privacy either in the plastic bags seized from Babatunde or the incriminating items found in the bags and, alternatively, that the search was valid.
*471 The State's standing argument was not presented to the trial court.[2] Therefore, we question whether this argument is properly before us. See Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234, 300 A.2d 142 (1973). In any event, we have no need to address the point because we are satisfied that the examination of the plastic bags Babatunde was carrying at the time of his arrest was a valid search incident to the arrest.
In a letter submitted after the filing of his brief, defendant argues, relying upon State v. Eckel, 185 N.J. 523, 888 A.2d 1266 (2006), that our Supreme Court has interpreted the New Jersey Constitution to impose stricter limitations upon searches incident to arrest than are imposed by the Fourth Amendment to the United States Constitution. Therefore, we first consider the validity of the search of the bags Babatunde was carrying at the time of his arrest under the Fourth Amendment. Because we conclude that this search did not violate the Fourth Amendment, we next consider whether the Supreme Court of New Jersey has construed the New Jersey Constitution to impose stricter limitations upon the kind of search incident to arrest involved in this case than are imposed under the Fourth Amendment. We conclude that, except for a search of the passenger compartment of an arrestee's automobile, the Court has applied the same test to determine the validity of searches incident to arrest under the New Jersey Constitution as applies under the Fourth Amendment. Accordingly, we affirm the denial of the suppression motion and defendant's convictions.

I
The leading case dealing with the permissible scope of a search incident to an arrest under the Fourth Amendment is Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). The Court in Chimel held that when the police arrest a suspect, they may conduct a search of his "person and the area `within his immediate control'  construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence." Id. at 763, 89 S.Ct. at 2040, 23 L.Ed.2d at 694. The Supreme Court of the United States has repeatedly reaffirmed the Chimel test for determining the validity of a search incident to an arrest. See, e.g., Illinois v. Lafayette, 462 U.S. 640, 644, 103 S.Ct. 2605, 2608, 77 L.Ed.2d 65, 70 (1983); United States v. Chadwick, 433 U.S. 1, 14, 97 S.Ct. 2476, 2485, 53 L.Ed.2d 538, 550 (1977); United States v. Robinson, 414 U.S. 218, 226, 94 S.Ct. 467, 472, 38 L.Ed.2d 427, 435 (1973); see generally 3 Wayne R. LaFave, Search and Seizure: A Treatise on the Fourth Amendment § 6.3(b) (4th ed.2004).
The authorization to search incident to an arrest is based on the need to disarm the arrestee and preserve evidence for later use at trial. Robinson, supra, 414 U.S. at 234, 94 S.Ct. at 476, 38 L.Ed.2d at 439-40. However, the validity of such a search "does not depend on what a court may later decide was the probability in a particular arrest situation that weapons or evidence would in fact be found upon the person of the suspect." Id. at 235, 94 S.Ct. at 477, 38 L.Ed.2d at 440. "A custodial arrest of a suspect based on probable cause is a reasonable intrusion under the *472 Fourth Amendment; that intrusion being lawful, a search incident to the arrest requires no additional justification." Id. at 235, 94 S.Ct. at 477, 38 L.Ed.2d at 440-41; see also Michigan v. DeFillippo, 443 U.S. 31, 35-36, 99 S.Ct. 2627, 2631, 61 L.Ed.2d 343, 348 (1979).
The authority to search an arrestee and the area within his immediate control includes the authority to search a container found in the arrestee's possession. United States v. Ross, 456 U.S. 798, 821-23, 102 S.Ct. 2157, 2171-72, 72 L.Ed.2d 572, 591-92 (1982); Gustafson v. Florida, 414 U.S. 260, 266, 94 S.Ct. 488, 492, 38 L.Ed.2d 456, 461-62 (1973); Robinson, supra, 414 U.S. at 236, 94 S.Ct. at 477, 38 L.Ed.2d at 441.
The only limitation upon a search of an arrestee's person and the area within his immediate control is that the search may not be "remote in time or place from the arrest[.]" Chadwick, supra, 433 U.S. at 15, 97 S.Ct. at 2485, 53 L.Ed.2d at 550-51 (quoting Preston v. United States, 376 U.S. 364, 367, 84 S.Ct. 881, 883, 11 L.Ed.2d 777, 780 (1964)). This limitation is sometimes expressed as a requirement that the search be "substantially contemporaneous" with the arrest. See Shipley v. California, 395 U.S. 818, 819, 89 S.Ct. 2053, 2054, 23 L.Ed.2d 732, 734 (1969); United States v. Currence, 446 F.3d 554, 557 (4th Cir.2006); Holmes v. Kucynda, 321 F.3d 1069, 1082 (11th Cir.2003); United States v. Morgan, 936 F.2d 1561, 1580 (10th Cir.1991), cert. denied, 502 U.S. 1102, 112 S.Ct. 1190, 117 L.Ed.2d 431 (1992).
The requirement of substantial contemporaneity of the arrest and search is ordinarily satisfied if the search of the arrestee and a container in his or her possession is made at the location of the arrest while the arrestee is still on the scene. See, e.g., Currence, supra, 446 F.3d at 554-59 (search into hollow area inside handlebar of defendant's bicycle valid where defendant was arrested and handcuffed before the police looked into the handlebar while defendant was still on the scene); United States v. Nelson, 102 F.3d 1344, 1346-47 (4th Cir.1996) (search valid where, within a few minutes, agents arrested defendant in the front room of an apartment, removed his shoulder bag, took him to a separate upstairs bedroom for questioning, and searched the bag), cert. denied, 520 U.S. 1203, 117 S.Ct. 1567, 137 L.Ed.2d 713 (1997); United States v. Hudson, 100 F.3d 1409, 1419-20 (9th Cir.1996) (search valid where rifle case was near defendant's feet at the time of arrest, and search was conducted three minutes after defendant was removed from the room), cert. denied, 522 U.S. 939, 118 S.Ct. 353, 139 L.Ed.2d 274 (1997); United States v. Han, 74 F.3d 537, 541-43 (4th Cir.) (search valid where bag was "unquestionably . . . in [defendant's] immediate control at the beginning of the encounter; the delay lasted just a few minutes; and the search occurred at the scene of the arrest"), cert. denied, 517 U.S. 1239, 116 S.Ct. 1890, 135 L.Ed.2d 184 (1996); United States v. Fleming, 677 F.2d 602, 606-08 (7th Cir. 1982) (search valid where bag was opened five minutes after defendant was handcuffed and moved to the street); see generally 3 LaFave, supra, § 5.5(a).
Consequently, the fact that the police seize a container in the possession of an arrestee at the time of the arrest, thereby depriving the arrestee of access, does not mean that a warrant must be obtained before the container can be opened and examined. As the court explained in Nelson,
While the need for the incident-to-arrest exception is indeed grounded on the need to protect law enforcement officers and evidence, the validity of such a *473 search does not end at the instant the risks justifying the search come to an end. Even though the warrant exception is well grounded on the existence of exigent risks attending arrest, the pragmatic necessity of not invalidating such a search the instant the risks pass is well accepted. . . . Just as arresting officers need not determine that the defendant actually have a gun or actually intend to destroy evidence before conducting a search incident to arrest, they need not reorder the sequence of their conduct during arrest simply to satisfy an artificial rule that would link the validity of the search to the duration of the risks. Pragmatic necessity requires that we uphold the validity and reasonableness of a search incident to arrest if the search is part of the specific law enforcement operation during which the search occurs.
[102 F.3d at 1347.]
Moreover, a search incident to an arrest may be valid under some circumstances even though it is not conducted contemporaneously with the arrest. In United States v. Edwards, 415 U.S. 800, 94 S.Ct. 1234, 39 L.Ed.2d 771 (1974), the Court upheld the validity of the seizure and subsequent search of clothing taken from an arrestee in jail approximately ten hours after his arrest. In holding that this seizure and search did not require a warrant, the Court stated:
[O]nce the accused is lawfully arrested and is in custody, the effects in his possession at the place of detention that were subject to search at the time and place of his arrest may lawfully be searched and seized without a warrant even though a substantial period of time has elapsed between the arrest and subsequent administrative processing, on the one hand, and the taking of the property for use as evidence, on the other.
[Id. at 807, 94 S.Ct. at 1239, 39 L.Ed.2d at 778.][3]
See generally 3 LaFave § 5.3(a). However, such a delayed search incident to an arrest may be made only of items that are "immediately associated with the person," such as a purse or wallet, and not of items such as the footlocker involved in Chadwick. Curd v. City Court, 141 F.3d 839, 842-44 (8th Cir.), cert. denied, 525 U.S. 888, 119 S.Ct. 204, 142 L.Ed.2d 167 (1998).
Applying these principles, we conclude that the search of the plastic bags seized from Babatunde was a valid search incident to his arrest. Since Babatunde was carrying the bags when he was arrested, they were clearly "within his immediate control." Consequently, defendant does not question the right of the arresting officers to seize the bags. Immediately after the seizure, the officers looked inside the bags and determined that they contained apparent evidence of criminal activity. Although Babatunde no longer had access to the bags at that point, the search was substantially contemporaneous with his arrest and therefore constituted a valid search incident to the arrest under the Fourth Amendment.
Because the search of the bags was substantially contemporaneous with Babatunde's arrest, we have no need to consider whether the bags were "personal effects" that under Edwards could have been searched even a substantial period of time after the arrest.

*474 II
We consider next whether the Supreme Court of New Jersey interpreted the New Jersey Constitution in Eckel to impose stricter limitations on searches incident to arrest than the federal courts have interpreted the Fourth Amendment to require. In Eckel, the Court rejected the "bright-line" rule of New York v. Belton, 453 U.S. 454, 460, 101 S.Ct. 2860, 2864, 69 L.Ed.2d 768, 775 (1981) "that when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile." In rejecting this rule, the Court concluded that "Belton detached itself from the theoretical underpinnings that initially animated the search incident to arrest exception." Eckel, supra, 185 N.J. at 540, 888 A.2d 1266.
To determine the relevance of Eckel to the search incident to Babatunde's arrest, it is necessary to identify the specific issue to which the Belton bright-line rule is addressed. As posed in the majority opinion, the issue in Belton was: "When the occupant of an automobile is subjected to a lawful custodial arrest, does the constitutionally permissible scope of a search incident to his arrest include the passenger compartment of the automobile in which he was riding?" 453 U.S. at 455, 101 S.Ct. at 2861, 69 L.Ed.2d at 771-72. In answering this question affirmatively, the Court accepted "the generalization that articles inside the relatively narrow compass of the passenger compartment of an automobile are in fact generally, even if not inevitably, within `the area into which an arrestee might reach in order to grab a weapon or evidentiary [item,]'" and therefore, the passenger compartment may be searched as a contemporaneous incident to the arrest. Id. at 460, 101 S.Ct. at 2864, 69 L.Ed.2d at 774-75 (quoting Chimel, supra, 395 U.S. at 763, 89 S.Ct. at 2040, 23 L.Ed.2d at 694). Thus, Belton held that the geographical scope of "the area within the immediate control of the arrestee" that Chimel allows the police to search incident to an arrest includes the entire passenger compartment of an automobile that the arrestee had recently occupied.
In criticizing this holding, Justice Brennan's dissent charged that the majority had "substantially expand[ed] the permissible scope of searches incident to arrest by permitting police officers to search areas and containers the arrestee could not possibly reach at the time of arrest." Id. at 466, 101 S.Ct. at 2867, 69 L.Ed.2d at 779. He also stated that "the crucial question under Chimel is not whether the arrestee could ever have reached the area that was searched, but whether he could have reached it at the time of arrest and search." Id. at 469, 101 S.Ct. at 2868, 69 L.Ed.2d at 780.
In Eckel, our Supreme Court rejected Belton's expansion of the geographical scope of "the area within the immediate control of the arrestee" to include the entire passenger compartment of an automobile recently occupied by the arrestee as well as the contents of any container found in the automobile. However, the Belton majority opinion did not address the temporal limits of a search incident to an arrest  how soon after an arrest the police must conduct a search for it to be considered "contemporaneous." See Chimel, supra, 395 U.S. at 764, 89 S.Ct. at 2040, 23 L.Ed.2d at 694. Therefore, our Supreme Court's rejection of the Belton rule relating to the geographical scope of a search incident to the arrest of an occupant of an automobile did not reflect any conclusion concerning the temporal limits of a search incident to an arrest under the New Jersey Constitution.
*475 Furthermore, except for its rejection of the Belton rule, our Supreme Court generally has not "afforded greater protection regarding the scope of a search incident to a lawful arrest under our State Constitution than that provided in Chimel's interpretation of the Fourth Amendment." State v. Dangerfield, 171 N.J. 446, 462, 795 A.2d 250 (2002); see also State v. Patino, 83 N.J. 1, 8-9, 414 A.2d 1327 (1980); State v. Ercolano, 79 N.J. 25, 36 n. 3, 397 A.2d 1062 (1979). Indeed, the Court in Eckel reiterated that "New Jersey's traditional approach to the search incident to arrest exception parallels Chimel." 185 N.J. at 535, 888 A.2d 1266. The Court in Eckel, as part of its rationale for rejecting the Belton rule, relied upon the fact that "once the occupant has been removed from the vehicle, placed under custodial arrest and seated in a police car, there is no danger that the arrestee might reach into his own vehicle to gain possession of a weapon or destructible evidence." Id. at 536, 888 A.2d 1266 (quoting State v. Alston, 88 N.J. 211, 235 n. 15, 440 A.2d 1311 (1981)). However, we see no basis for construing this statement in Eckel, in which the only issue presented was the validity of the Belton rule under the New Jersey Constitution, as a rejection of Ross, Gustafson, Robinson and the other federal cases discussed in section I of this opinion, which uphold the validity a contemporaneous search of a container in the immediate control of an arrestee even though the police remove the container from the arrestee's possession before searching it.
Affirmed.
NOTES
[1] The transcript of the suppression hearing includes only part of the arresting officer's cross-examination. Defendant does not claim any prejudice as a result of the absence of the remainder of the officer's testimony or seek a remand for reconstruction of this part of the record. The arresting officer's trial testimony, all of which was transcribed, was substantially the same as his testimony at the suppression hearing.
[2] The State suggests that it did not raise the standing issue because only Babatunde moved to suppress the evidence obtained in the search. However, the record does not support this contention. Although the record before us does not include the motion to suppress, defendant's counsel participated in the hearing on the motion, and the order denying the motion indicates that it was filed on behalf of both defendants.
[3] The personal effects in an arrestee's possession also may be the subject of an "inventory search" conducted "as part of the routine administrative procedure at a police station house incident to booking and jailing[.]" Lafayette, supra, 462 U.S. at 643-48, 103 S.Ct. at 2608-11, 77 L.Ed.2d at 69-73.