**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5238-15T3

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

KEITH R. EVANS,

    Defendant-Appellant.

_____

Submitted March 7, 2018 — Decided  June 6, 2018

Before Judges Alvarez and Currier.

On appeal from Superior Court of New Jersey, Law Division, Middlesex County, Indictment No. 13-08-1082.

Joseph E. Krakora, Public Defender, attorney for appellant (John Douard, Assistant Deputy Public Defender, of counsel and on the brief).

Andrew C. Carey, Middlesex County Prosecutor, attorney for respondent (Nancy A. Hulett, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

    Tried by a jury, defendant Keith Evans was convicted of third-degree unlawful possession of heroin, N.J.S.A. 2C:35-10(a)(1)

(count one); and third-degree possession with intent to distribute heroin, N.J.S.A. 2C:35-5(a)(1) and 2C:35-5(b)(3) (count three).[1] The trial judge sentenced defendant to a mandatory extended term as a repeat drug distributor, pursuant to N.J.S.A. 2C:43-6(f) and 2C:43-7, to eight years of imprisonment subject to four years of parole ineligibility. Appropriate fines and penalties were also imposed.

We glean the following facts and circumstances from the trial record and, where relevant, the record of the pretrial suppression motion. On April 9, 2013, Woodbridge Police Detective Matthew Herbert observed a blue and black Dodge Charger with an obstructed Ohio license plate and a missing or nonfunctional rear light. Herbert, accompanied in the patrol car by a Detective Grogan,[2] also observed the vehicle make a left turn without signaling. They stopped the car; Herbert approached on the driver's side while his partner approached the passenger's side.

Herbert asked Giardina, the driver, to provide his credentials and step outside of the vehicle. Giardina's pupils were dilated, he was stuttering, his hands were shaking, and he

---

[1] Co-defendant Christopher Giardina was charged with one count of third-degree unlawful possession of heroin, N.J.S.A. 2C:35-10(a)(1) (count two). He entered a guilty plea and was admitted into the pretrial intervention program.

[2] Grogan's first name is not found in the record.

A-5238-15T3

had remnants of dried chewing tobacco encrusted around his mouth. Giardina was also "blading" his body, which Herbert concluded was his attempt to keep him away from the car. The officer asked Giardina for the name of his passenger, which he denied knowing other than "J." Giardina said that the men were on their way to a McDonalds.

Herbert recalled that he

> had recently received information from a confidential informant stating that an individual named -- referred to as Joker, whose real name is Keith Evans, and who is a 39-year old black male from Newark, travels to Woodbridge daily in order to distribute heroin. Also was advised that . . . Evans frequently has younger individuals from Woodbridge drive him around.

He received that intelligence information within a month of the stop. The passenger, defendant, told Herbert when asked that he was thirty-nine and from Newark. Defendant also stated the men were looking for a pull-up bar. Herbert requested backup because the informant had also claimed that defendant sometimes carried weapons.

Herbert spoke to Giardina a second time, asking him for consent to search the vehicle. He explained that if Giardina refused, he would request a police canine to conduct a "sniff," and if the dog alerted to the vehicle, they would obtain a search

warrant. Herbert explained that Giardina and defendant were free to leave, but that the car would stay until the dog arrived.

Giardina asked to speak to Herbert behind the vehicle. Once the men had moved to the back of the car, Giardina told the officer that defendant had dropped heroin on the passenger's side when he pulled over. Giardina did not know exactly how much heroin, but thought it was four bundles, or forty bags. Herbert approached defendant on the passenger's side and asked him to exit the vehicle. When he asked defendant if he had heroin, defendant responded with "heroin?"

Defendant invited Herbert to search him; he had $560—consisting of three hundred-dollar bills, nine twenty-dollar bills, six ten-dollar bills, and four five-dollar bills—along with two cell phones. When a third officer arrived at the scene, it was learned that defendant had an active Newark Municipal Court warrant. Giardina agreed to Herbert's second request for consent to search and signed a written consent form.

Herbert's initial search of the vehicle was unsuccessful. He asked Giardina if he knew where defendant had put the heroin, and Giardina responded that he must have thrown it out the window. The officer asked Giardina to help him move the passenger seat back in the car. While doing so, Giardina stomped his foot, indicating there was something in the undercarriage. There,

Herbert found a paper towel containing sixty-four bags or wax folds of heroin stamped with the word "ozone." A third cell phone was found in the vehicle, belonging to Giardina, along with an empty bag of heroin, also stamped "ozone," and a cut straw.

Officers later found an April 9, 2013 text message on one of defendant's cell phones received from a person identified as "Coco" stating "I have some sales for you." The number for Coco matched the phone number Giardina provided police following his arrest. There was also an outgoing text message sent on April 7, 2013, to a person identified only as "AJ," stating "Jump on that Ozone, bro." A third text message sent on April 4 also referred to "ozone." The judge excluded the April 4 message, since it was somewhat remote from the day of the arrest. The other two, however, were moved into evidence by the State.

At the suppression hearing, the judge found that during the traffic stop, Giardina's appearance credibly alerted Herbert that something was amiss. Once Giardina named his passenger as "J," the officer reasonably connected the name with the information he had previously received. The judge noted that according to the confidential informant, "J" needed someone to drive him because he was visually impaired, as was defendant. Since the judge found the officer credible, he also found Giardina's consent to have been freely, knowingly, and voluntarily given. It was Giardina

himself who drew Herbert's attention to the passenger side undercarriage of the car where he recovered the paper towel containing the heroin stamped ozone.

The judge ruled the April 9 text admissible because he considered it "intrinsic to the criminal activity that allegedly took place on that day." Although the phone was not registered to defendant, it was found on his person. The text from Giardina to the effect that he had "sales" for defendant was also admitted as intrinsic to the charges. Applying the Cofield[3] analysis, the judge concluded that the probative value of the word "ozone" and the dates of the messages were not outweighed by any potential for prejudice. When the messages were admitted during the trial, the court instructed the jury regarding prior bad acts,[4] and reiterated the instruction in the final charge.

The judge granted the State's application for defendant to be sentenced as an extended-term offender because it was defendant's fourth conviction for drug distribution. In sentencing defendant, the judge found aggravating factors three, six, and nine, and mitigating factor eleven. See N.J.S.A. 2C:44-1(a)(3); N.J.S.A. 2C:44-1(a)(6); N.J.S.A. 2C:44-1(a)(9);

---

[3]   State v. Cofield, 127 N.J. 328 (1992).

[4]   Model Jury Charges (Criminal), "Proof of Other Crimes, Wrongs, or Acts, (N.J.R.E. 404(b))" (rev. Sept. 12, 2016).

N.J.S.A. 2C:44-1(b)(11). Defendant was the custodial parent of his five children and was visually impaired, but those circumstances recognized by mitigating factor eleven did not outweigh the aggravating factors, given defendant's substantial prior criminal history. The judge concluded that the aggravating factors substantially outweighed the mitigating factor. He properly merged the possession of heroin into the possession with intent.

Now on appeal, defendant raises the following:

> POINT I
> THE PHYSICAL EVIDENCE FROM THE WARRANTLESS AUTOMOBILE SEARCH ON APRIL 9 MUST BE SUPPRESSED BECAUSE THE POLICE HAD NO CONSTITUTIONALLY VALID REASONS TO STOP AND DETAIN THE CAR AND TO SEIZE ANYTHING FOUND INSIDE IT.
>
>> A.   Automobile Stops Must Be Limited In Scope To The Purpose Of The Stop.
>>
>> B.  The Trial Court Erred Finding a Valid Consent Search.
>
> POINT II
> MR. EVANS' APRIL 7 TEXT CONTAINED PREJUDICIAL N.J.R.E. 404b EVIDENCE THAT WAS IMPROPERLY SUBMITTED TO THE JURY AND DEPRIVED MR. EVANS OF HIS RIGHT TO A FAIR TRIAL. U.S. CONST. AMENDS. VI, XIV; N.J. CONST., ART. I, PARS. 1, 10.
>
> POINT III
> THE EIGHT-YEAR SENTENCE WITH A FOUR-YEAR PERIOD OF PAROLE INELIGIBILITY IS MANIFESTLY EXCESSIVE.

7

In reviewing a motion to suppress, we defer to the factual and credibility findings of the trial court, "so long as those findings are supported by sufficient credible evidence in the record." State v. Handy, 206 N.J. 39, 44 (2011) (quoting State v. Elders, 192 N.J. 224, 243 (2007)). Deference is afforded "because the 'findings of the trial judge . . . are substantially influenced by his opportunity to hear and see the witnesses and to have the "feel" of the case, which a reviewing court cannot enjoy.'" State v. Reece, 222 N.J. 154, 166 (2015) (quoting State v. Locurto, 157 N.J. 463, 471 (1999)). Appellate courts "should disregard those findings only when a trial court's findings of fact are clearly mistaken." State v. Hubbard, 222 N.J. 249 (2015) (citing State v. Johnson, 42 N.J. 146, 161 (1964)); see also State v. Best, 403 N.J. Super. 428, 434 (App. Div. 2008) (quoting Elders, 192 N.J. at 244) (reasoning that a motion court's findings may be disturbed only when "they are so clearly mistaken 'that the interests of justice demand intervention and correction'"). The legal conclusions of the trial court are subject to de novo review. Hubbard, 222 N.J. at 263 (citing State v. Gandhi, 201 N.J. 161, 176 (2010)).

The Fourth Amendment of the United States Constitution and Article I, Paragraph 7 of the New Jersey Constitution protect

individuals from unreasonable searches and seizures. U.S. Const. amend. IV; N.J. Const. art. I, ¶ 7. "There is a constitutional preference for" law enforcement officers to obtain a warrant from a neutral magistrate before conducting a search or seizure. State v. Pineiro, 181 N.J. 13, 19 (2004) (citing State v. Demeter, 124 N.J. 374, 381 (1991)); State v. Ravotto, 169 N.J. 227, 236 (2001). Exceptions to a search or seizure conducted without a warrant include an investigatory stop, a search incident to arrest, an automobile search, and a search conducted pursuant to consent. State v. Coles, 218 N.J. 322, 342 (2014); State v. Oyenusi, 387 N.J. Super. 146, 153 (App. Div. 2006) (citing Chimel v. Cal., 395 U.S. 752 (1969)); State v. Witt, 223 N.J. 409, 422 (2015); State v. Domicz, 188 N.J. 285, 305 (2006).

Defendant now challenges the admissibility of the evidence seized because the search exceeded the purpose for the traffic stop. We find this argument to be so lacking in merit as to warrant little discussion in a written opinion. R. 2:11-3(e)(2).

Police ordinarily stop motorists for driving infractions. If, during the stop, the circumstances indicate some other criminality is afoot and the officers have some lawful basis to proceed, like the consent in this case, they may lawfully investigate.

Defendant also challenges the validity of the search conducted once Giardina consented. This claim too lacks merit.

The judge found Herbert's testimony credible. Once stopped, Herbert's description of Giardina's appearance, conduct, and his identification of defendant as "J," gave rise to a lawful basis to request a consent to search.

A consent to search is a well-recognized exception to the warrant requirement. Domicz, 188 N.J. at 305. Consent must be voluntarily given and cannot "be coerced, by explicit or implicit means, by implied threat[,] or covert force." Schneckloth v. Bustamonte, 412 U.S. 218, 228 (1973). The threshold issue where defendants later contest the validity of a search based on consent is "whether a person has knowingly waived his right to refuse to consent to the search." Domicz, 188 N.J. at 308 (citation omitted). The burden is on the State to prove that consent was voluntary. State v. Johnson, 68 N.J. 349, 354 (1975).

To determine if consent was coerced, the court must examine the "surrounding circumstances." Schneckloth, 412 U.S. at 229. "Voluntariness is a question of fact to be determined from all the circumstances" surrounding the stop, consent, and search. Id. at 248-49. An essential element in determining whether consent is voluntary is proof that the individual was aware of the right to refuse consent to search. Johnson, 68 N.J. at 353-54. Herbert's

testimony unquestionably established that the consent to search was voluntary.

Defendant attacks the consent on the basis that Giardina was in custody. Again, we do not agree.

Herbert told Giardina that while the dog was being brought to the scene, he and defendant were free to leave. That uncontested statement establishes that Giardina was not in custody. Giardina's cooperation and willing execution of the consent to search is further corroborated by the fact that he actually directed the officer to the drugs.

## II.

We give great deference to a trial court's determination on the admissibility of other crimes evidence. State v. Goodman, 415 N.J. Super. 210, 228 (App. Div. 2010) (citing State v. Foglia, 415 N.J. Super. 106, 122 (App. Div. 2010)). There must be a "clear error of judgment" before we overturn the trial court's decision. State v. Castagna, 400 N.J. Super. 164, 183 (App. Div. 2008).

Pursuant to N.J.R.E. 404(b),

> evidence of other crimes, wrongs, or acts is not admissible to prove the disposition of a person in order to show that such person acted in conformity therewith. Such evidence may be admitted for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity[,] or absence of mistake or accident when such matters are relevant to a material issue in dispute.

"[T]he underlying danger of admitting other-crime [or bad-act] evidence is that the jury may convict the defendant because he is a bad person in general." State v. Skinner, 218 N.J. 496, 514 (2014) (citation omitted) (quoting Cofield, 127 N.J. at 336). In Cofield, the Court established a four-part test to avoid the over-use of other crimes evidence pursuant to N.J.R.E. 404(b). 127 N.J. at 338. The four-part Cofield test requires:

> 1. The evidence of the other crime must be admissible as relevant to a material issue;
> 2. It must be similar in kind and reasonably close in time to the offense charged;
> 3. The evidence of the other crime must be clear and convincing; and
> 4. The probative value of the evidence must not be outweighed by its apparent prejudice.
>
> [Ibid. (quoting Abraham P. Ordover, Balancing the Presumptions of Guilt and Innocence: Rules 404(b), 608(b), and 609(a), 38 Emory L.J. 135, 160 (1989) (footnote omitted)).]

Defendant challenges the admission in evidence of only the April 7, 2013 text message. This was the outgoing text message sent to "AJ" which said, "Jump on that Ozone, bro."

The judge found that the text message was admissible because it was so uniquely relevant to the material issue of defendant's possession and possession with intent. It connected the quantity of drugs, defendant's possession, the cash on his person, and the stamp on the bags. The cell phone with the incriminating message

12

was found on defendant's person when he was searched. The fourth element of the <u>Cofield</u> test requires a balancing of prejudice versus probative value. The risk of undue prejudice must not outweigh the probative value. <u>See</u> <u>State v. Rose</u>, 206 N.J. 141, 161-62 (2011). The probative value of the evidence, establishing ownership, was not outweighed by the apparent prejudice and was properly admitted. Additionally, the judge instructed the jury as to the limited purpose for admission of the text message, both when it was admitted and in the final jury charge. We assume that jurors follow instructions. <u>State v. Witte</u>, 13 N.J. 598, 612 (1953).

## III.

We review sentencing determinations deferentially. <u>State v. Grate</u>, 220 N.J. 317, 337 (2015); <u>State v. Case</u>, 220 N.J. 49, 65 (2014). We begin with the fact that defendant's extended-term sentence was mandatory. He was convicted of a third-degree offense, which means that he could be sentenced within the second-degree range. This was defendant's fourth conviction for drug distribution. The judge had the discretion to sentence defendant to up to ten years, half of which could have been made parole-ineligible time. The judge carefully analyzed the aggravating factors and the sole mitigating factor, and properly identified and balanced the statutory considerations which were "supported

13

by competent credible evidence in the record."  Grate, 220 N.J. at 337 (citing State v. Lawless, 214 N.J. 594, 606 (2013)).  This sentence does not shock our judicial conscience.  See State v. Roth, 95 N.J. 334, 364 (1984).

We do not agree that the judge did not accord sufficient weight to mitigating factor eleven——the traumatic effect the sentence would have on defendant's children and defendant's vision impairment.  The judge did not ignore those considerations.  He merely balanced them against defendant's substantial prior history of drug distribution and the other aggravating factors, and therefore engaged in a proper analysis before making his decision.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5238-15T3