**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3157-16T2

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

TERIQ C. DAVIS, a/k/a
TARIQ C. DAVIS, TARIQ DAVIS,
TEIRIQ CROSBY DAVIS,
TERIG CROSBY DAVIS,
TERIO CROSBY DAVIS,
TERIO DAVIS, TERIQ C. DAVIS, SR.,
TERIQ CROSBY DAVIS,
TERIQ CROSBY DAVIS, SR.,
TERIQ DAVIS, and TERIQUE DAVIS,

     Defendant-Appellant.

_____

Argued January 30, 2019 – Decided April 29, 2019

Before Judges Alvarez and Nugent.

On appeal from Superior Court of New Jersey, Law Division, Union County, Indictment No. 14-08-0720.

Stephen P. Hunter, Assistant Deputy Public Defender, argued the cause for appellant (Joseph E. Krakora,

Public Defender, attorney; Stephen P. Hunter, of counsel and on the brief).

Meredith L. Balo, Special Deputy Attorney General/Acting Assistant Prosecutor, argued the cause for respondent (Michael A. Monahan, Acting Union County Prosecutor, attorney; Meredith L. Balo, of counsel and on the brief).

PER CURIAM

Tried by a jury, defendant Teriq C. Davis was convicted of second-degree unlawful possession of a handgun, N.J.S.A. 2C:39-5(b), and fourth-degree unlawful possession of hollow point bullets, N.J.S.A. 2C:39-3(f). The jury acquitted defendant of second-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(a) and fourth-degree aggravated assault, N.J.S.A. 2C:12-1(b)(4). Defendant appeals, arguing that the trial judge erroneously denied his motion to suppress, and, if the conviction stands, that his sentence is excessive. On January 27, 2017, the trial judge imposed seven years imprisonment, subject to forty-two months of parole ineligibility, on the unlawful possession of a weapon, and concurrent terms of eighteen months incarceration on the possession of hollow point bullets and six months on the disorderly persons charge of resisting arrest, which the judge decided as the trier of fact. We affirm.

Hillside police officers responded to a call reporting a "domestic in progress involving a weapon." The dispatch included the information that during the course of "an altercation between a boyfriend and girlfriend, . . . the male on scene had pointed a handgun at his girlfriend."

Officer Joseph Vetter testified that upon arrival, he saw defendant walking out the front door of the house holding a green reusable lunch bag in his left hand. Defendant dropped the bag at the top of the landing as soon as he saw the officers approach, and walked down some stairs. Vetter described the staircase of this single-family home as "a small stairway leading up to the front door, well-illuminated . . . just a small stairway, maybe five or six stairs up to the landing with a small landing at the top." When police met defendant at the sidewalk, he was ordered to raise his hands. Vetter walked into the home to speak with the victim.

Officer Daniel Wanat and a third officer, who did not testify at the suppression hearing, conducted a pat down of defendant to search for weapons. Meanwhile, the victim informed Vetter that defendant's handgun, which he pointed at her during an argument, was in the green bag he had taken with him. Vetter walked back outside, looked inside the bag defendant had dropped, and saw a handgun. He estimated that defendant was only five or six steps away

from the bag. Vetter said that at the time he opened the bag, defendant was standing at the foot of the landing, and had not been handcuffed.

Wanat testified at the suppression hearing that he saw defendant walk out of the house and place a green bag he had been holding in his left hand "on the top of the stoop as we were approaching." He estimated the distance between the landing where the bag was located and defendant when arrested at maybe four to five feet. Wanat did not remember if defendant walked all the way down the stairs as the officers approached, but he did remember that defendant seemed taller because he was standing on a step above them. When asked on cross-examination "the approximate linear distance" between the edge of the landing and the street, the officer said approximately twelve feet and then said he "really [did not] know." Later on re-cross, Wanat said the distance between the green bag and the bottom of the steps was approximately twelve or thirteen feet.

When defendant testified at the suppression hearing, he denied holding the green bag as he walked out of the house. He said the officers tackled him to the ground, cuffed his wrists behind him, and then one officer sat on his back while the other put his knee in his face and smashed it to the ground. Defendant also said that two officers went inside the house and returned with the green bag. He heard one officer tell the other that they had "hit the jackpot." Defendant

4

could not see what they were referring to as he was placed in the back seat of the police car.

The judge denied the suppression motion because although the police had probable cause to arrest and search incident to that arrest, defendant abandoned the property when he threw it on the ground and walked away. He found the police officers more credible than defendant, whom he found "not credible at all." He reached those conclusions not only from the demeanor of the witnesses, but from the internal consistency of their testimony. He observed that "[t]he defendant would have this court believe that he innocently left the home and was beset upon by police officers, [roughed] up and a gun was . . . attributed to him."

I.

We review the factual findings made by a trial judge during a motion to suppress deferentially, and so long as they are supported by sufficient credible evidence, we will not disturb them. State v. Elders, 192 N.J. 224, 243 (2007). When defending a warrantless search, the State bears the burden of establishing by a preponderance of the credible evidence that it fits within one of the exceptions to the warrant requirement. State v. Minitee, 210 N.J. 307, 318 (2012). One such exception is an officer's right to search a defendant's person

without a warrant if there is probable cause to arrest. State v. Evans, 181 N.J. Super. 455, 459 (App. Div. 1981). The purpose of a search incident to arrest is to protect arresting officers from potential dangers, as well as to prevent destruction or concealment of evidence. State v. Dangerfield, 171 N.J. 446, 461 (2002).

We have previously held that a container in a suspect's possession at the time of a lawful arrest may be searched under the search incident to arrest exception, even if the suspect is no longer holding the container at the time of the search. State v. Oyenusi, 387 N.J. Super. 146, 155 (App. Div. 2006). Such searches are lawful, so long as contemporaneous with the arrest. Ibid.

Defendant argues that the search in this case was unlawful because of the distance he claims, twelve feet, between him at the point of the arrest and the green bag. We are satisfied based on our review of the record, however, that although when pressed on cross-examination, Wanat agreed the distance could have been as many as ten or twelve feet, he also said the bag was located on a landing only four or five steps above the street level. That description, more precise than an estimate of distance, placed the bag, which officers knew contained a handgun, within defendant's reach. Wanat's more concrete description of the location of the bag, which did not include an estimate,

6

matched Vetter's. Thus, it was reasonable for the officer to have searched the bag, particularly in light of defendant's struggle when arrested, which the trial judge found sufficient to warrant conviction of the disorderly persons offense of resisting arrest. Relying on the judge's credibility findings, the search was conducted incident to arrest and should be affirmed. See Oyenusi, 387 N.J. Super. at 156-57.

## II.

We briefly touch upon defendant's contention that he had not abandoned the bag. Given the judge's factual finding that the officers' version of events was accurate, we must assume that defendant was seen by the officers deliberately discarding the bag and walking down the stoop.

Defendant did not even claim that the bag was his—in fact, he denied ownership at the suppression hearing. Therefore, a reasonable construction of the circumstances is that he abandoned the bag, hoping to either not have been seen or to deflect the officers' attention from the lunch bag in which the handgun was hidden.

Property is treated as abandoned when discarded. State v. Gibson, 318 N.J. Super. 1, 11 (App. Div. 1999) (quoting State v. Farinich, 179 N.J. Super. 1, 6 (App. Div. 1981)). If the State establishes the property was abandoned, the

defendant has no right to challenge the search or seizure of it. State v. Johnson, 193 N.J. 528, 548 (2008).

The judge concluded, based on the officers' credible testimony, that defendant casually walked out of the house, dropped the bag, and continued down the steps as if he did not see anyone. It was not until the officers approached him and Vetter went up the steps, that defendant began to struggle. Therefore, on the theory of abandonment, the officers had an independent basis to search.

## III.

Finally, defendant challenges the court's sentence as excessive. We review sentencing decisions deferentially. State v. Fuentes, 217 N.J. 57, 70 (2014). We do not substitute our judgment for that of the sentencing court. State v. O'Donnell, 117 N.J. 210, 215 (1989). In this case, the trial court engaged in an expansive analysis of the aggravating factors. The judge found aggravating factors three, six, and nine, given defendant's long history with the criminal justice system dating back some twenty years. See N.J.S.A. 2C:44-1(a)(3), (6), and (9). His criminal history included Virginia as well as New Jersey.

The judge found no mitigating factors. Defendant's argument on appeal that mitigating factors one, two, and seven should have been found by the trial

court lacks sufficient merit to warrant discussion in a written opinion. See R. 2:11-3(e)(2); N.J.S.A. 2C:44-1(b)(1), (2), and (7). Possession of a loaded handgun filled with hollow point bullets clearly poses a threat of serious harm and has great potential to harm others. Defendant had not "led a law-abiding life for a substantial period of time before the commission of the present offense." N.J.S.A. 2C:44-1(b)(7).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

9

A-3157-16T2