**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1005-18

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

JOAO C. TORRES,

    Defendant-Appellant.

_____

Argued May 18, 2020 – Remanded July 9, 2020
Reargued February 10, 2022 – Decided March 1, 2022

Before Judges Alvarez and Mawla.

On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Indictment No. 17-03-0371.

Margaret McLane, Assistant Deputy Public Defender, argued the cause for appellant (Joseph E. Krakora, Public Defender, attorney; Margaret McLane, of counsel and on the briefs).

Steven A. Yomtov, Deputy Attorney General, argued the cause for respondent (Andrew J. Bruck, Acting Attorney General, attorney; Steven A. Yomtov, of counsel and on the briefs).

PER CURIAM

This matter returns after a remand to the motion judge for further findings regarding a suppression motion filed by defendant Joao C. Torres challenging the constitutionality of a warrantless seizure during a murder investigation. State v. Torres, No. A-1005-18 (App. Div. July 9, 2020) (slip op. at 2). Defendant argued the judge erred when he failed to suppress the seizure of clothing defendant was wearing when he was taken into custody as an unconstitutional strip search. We rejected that argument. However, we remanded for further findings because the judge did not determine whether there was probable cause to arrest defendant when his clothing was seized, and did not analyze whether the warrantless seizure was valid under the search incident to arrest or inevitable discovery exceptions. Id. at 8-10. On July 6, 2021, the motion judge issued a final decision and written findings denying defendant's motion. We now affirm.

Middlesex County Prosecutor's Office Detective Craig Marchak was the sole witness at the suppression hearing. On January 4, 2017, at 12:30 p.m., Marchak was assigned to investigate a homicide at a Monroe Township residence where officers responded to a 9-1-1 call and reported large amounts of blood in a bedroom. Police located the body of defendant's stepfather

Christopher Ernst, Sr., wrapped in a blanket and a garbage bag secured by duct tape in the residence's garage. Detectives learned defendant and Ernst were home the night before. Ernst's truck and defendant were missing.

Police located defendant and the truck in a nearby wooded area. He was in a structure on the property, and when he exited, he ignored police commands to stop and entered the woods. Defendant was later discovered in the rear storage of a disabled mulch truck and placed under arrest on an outstanding traffic warrant. Marchak testified at that point defendant was a suspect in the murder. Defendant was transported to the police department, Mirandized,[1] and Marchak and Monroe Township Police Detective Joseph Silvestri began interviewing him at 4:26 p.m. The video recording of the interview was played at the suppression hearing.

Marchak informed defendant they were interviewing him about the blood in the house and the discovery of Ernst's body. Marchak told defendant police "talked to a lot of people already" and defendant responded: "I'm always the [scapegoat] in the family so go ahead." Later during the interview, Silvestri described more of the evidence police found and said: "We know what

---

[1] Miranda v. Arizona, 384 U.S. 436 (1966).

 A-1005-18

happened." Defendant then invoked his right to remain silent and his right to counsel. Marchak noted defendant never asked what happened to Ernst.

Marchak testified he decided to take defendant's clothing following his statement because "[t]hroughout the interview" he noticed a substance on defendant's hands. Marchak explained defendant "was picking at his hands, looking at his hands. . . . I could see him . . . rubbing his fingers when his hands are crossed. He then put his hands into his pockets. And you could see movement within that. That's when [defendant asks] why I'm staring at him." The prosecutor paused the video at the 4:51 p.m. time stamp to show the judge an example of defendant's conduct.

Marchak testified he exited the interview room at approximately 5:08 p.m. to discuss the matter with other officers. He stated:

> Due to the enormous amount of blood [at the crime scene] . . . whatever other evidence [that] would be there should have been on someone's hands or . . . clothing . . . and there should be something possibly left over, whether [you wear] gloves or not. . . .
>
> I was trying to look at his hands . . . [a]nd you could see . . . they're a little dirty, like they've already either been washed . . . or maybe it's just dirt, but at that point we weren't sure. So, we took precautionary measures.

4

A-1005-18

Marchak explained he wanted to get a warrant to take defendant's clothing and swab his hands but decided against it out of concern defendant would destroy the evidence on his hands by continuing to rub them or using the bathroom. Without a warrant, officers swabbed defendant's hands, removed his clothing, and gave him a Tyvek suit.[2]

Following our remand, the motion judge found the warrantless search lawful as a search incident to arrest. He concluded the "officers acted in an objectively reasonable manner[,]" reasoning defendant was initially a person of interest as a household member, but could not be found, and later "fled and hid," requiring a police search and was arrested on an outstanding warrant. The judge found police "made a reasonable decision" to swab defendant's hands and seize his clothing based on the concern defendant was destroying evidence. The judge stated:

> [U]nder the totality of the circumstances, especially considering the information officers were already privileged to regarding the victim's death,[] a real-time decision had to be made, balancing the intrusion on [defendant's] Fourth Amendment interests against the legitimate governmental interests. There is no doubt that the interest to collect the evidence as soon as possible without a warrant is a legitimate governmental interest.

---

[2] The record shows this process began at 6:41 p.m. and concluded at 7:02 p.m.

Citing our decision in State v. Lentz, 463 N.J. Super. 54, 68 (App. Div. 2020), the judge further noted the warrantless swabbing of a defendant's hands and removal of his clothing was constitutional because it "'was non-invasive, brief, and performed only to recover evidence . . . stemming from [defendant's] suspected involvement' in the murder of his step-father."

On appeal, defendant argues:

> POLICE WERE NOT PERMITTED TO SEIZE AND SEARCH DEFENDANT'S CLOTHES WITHOUT A WARRANT HOURS AFTER HIS ARREST.

"An appellate court reviewing a motion to suppress evidence in a criminal case must uphold the factual findings underlying the trial court's decision, provided that those findings are 'supported by sufficient credible evidence in the record.'" State v. Mandel, 455 N.J. Super. 109, 113-14 (App. Div. 2018) (quoting State v. Boone, 232 N.J. 417, 425-26 (2017)). "We owe no deference, however, to conclusions of law made by trial courts in deciding suppression motions, which we . . . review de novo." State v. Brown, 456 N.J. Super. 352, 358-59 (App. Div. 2018) (citing State v. Watts, 223 N.J. 503, 516 (2015)).

"Both the United States Constitution and the New Jersey Constitution guarantee an individual's right to be secure against unreasonable searches or seizures." State v. Minitee, 210 N.J. 307, 318 (2012) (citing U.S. Const. amend.

IV; N.J. Const. art. I, ¶ 7). "[S]earches and seizures conducted without warrants issued upon probable cause are presumptively unreasonable and therefore invalid." State v. Elders, 192 N.J. 224, 246 (2007).

"[T]he search incident to arrest exception to the warrant requirement was limned for two specific purposes—the protection of the police and the preservation of evidence . . . ." State v. Eckel, 185 N.J. 523, 524 (2006). Pursuant to the exception, "the arresting officer [can] search" both "the arrestee's person and the area 'within his immediate control'" in order to prevent the arrestee from obtaining a weapon or destroying evidence. Chimel v. California, 395 U.S. 752, 763 (1969). The arrest need not be related to the offense for which the search is being conducted. Lentz, 463 N.J. Super. at 60, 75. Indeed,

> because a lawful "custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment[,] . . . a search incident to the arrest requires no additional justification," and the mere "fact of the lawful arrest which establishes the authority to search" justifies "a full search of the person."
>
> [Id. at 70 (alteration in original) (quoting United States v. Robinson, 414 U.S. 218, 235 (1973)).]

"Whether a search is reasonable under the Fourth Amendment 'depends on [the totality] of the circumstances surrounding the search . . . and the nature of the search . . . itself.'" State v. O'Hagen, 189 N.J. 140, 149 (2007) (quoting

A-1005-18

, 489 U.S. 602, 619 (1989)). "In making that determination, the [c]ourt balances the 'intrusion on the individual's Fourth Amendment interests against [the] promotion of legitimate governmental interests.'" Ibid. (second alteration in original) (quoting Skinner, 489 U.S. at 619).

We have held "a search incident to an arrest may be valid under some circumstances even though it is not conducted contemporaneously with the arrest." State v. Oyenusi, 387 N.J. Super. 146, 156 (App. Div. 2006). In Oyenusi, we pointed to United States v. Edwards, 415 U.S. 800, 807 (1974), where the Court "upheld the validity of the seizure and subsequent search of clothing taken from an arrestee in jail approximately ten hours after his arrest." 387 N.J. Super. at 156. In Lentz, we also discussed Edwards, stating:

> There, the defendant was lawfully arrested and in custody in a jail cell "[w]hen it became apparent that the articles of clothing [he was wearing] were evidence of the crime for which [he] was being held." [Edwards, 415 U.S. at 608]. The Court found it was "reasonable to take and examine [his clothing] as the police did, particularly in view of the existence of probable cause linking the clothes to the crime." Ibid.
>
> . . . .
>
> The Court explained "it is difficult to perceive what is unreasonable about the police's examining and holding as evidence those personal effects of the

accused that they already have in their lawful custody as the result of a lawful arrest." [Ibid.]

[Lentz, 463 N.J. Super. at 71-72 (alterations in original).]

We noted our own Supreme Court held "if the arrest . . . is lawful the search . . . [is] not invalidated solely because the officers had adequate time to procure a search . . . warrant." Id. at 77 (alteration in original) (quoting State v. Doyle, 42 N.J. 334, 343 (1964)). Rather, "the proper inquiry for determining the constitutionality of a search-and-seizure is whether the conduct of the law enforcement officer who undertook the search was objectively reasonable." Watts, 223 N.J. at 514 (quoting State v. Bruzzese, 94 N.J. 210, 219 (1983)). "The test is not whether there were other reasonable or even better ways to execute the search, for hindsight and considered reflection often permit more inspired after-the-fact decision-making." Ibid. "For purposes of our Federal and State Constitutions, it is enough that the police officers, in performing their duties, acted in an objectively reasonable fashion." Id. at 515.

Defendant argues the search incident to arrest was unconstitutional because: police lacked probable cause; there was an unreasonable delay between his arrest and the seizure of his clothing; and the search was unreasonably invasive. We are unpersuaded.

A-1005-18

Defendant was under lawful arrest on a traffic warrant at the time he was taken to the police station to be interviewed. Based on the information police gathered prior to the interview, he was clearly a suspect, and police told him so during the interview. The record corroborates Marchak's testimony; defendant appeared to be destroying the evidence on his hands as the interview progressed. Given the totality of the circumstances—namely the blood discovered at the crime scene and that the body was moved from one part of the residence to another; defendant's attempt to flee police; and his comments and conduct at the interview—it was not unreasonable for police to conclude his clothing also contained evidence of the crime. The record shows there was probable cause.

There was also no unreasonable delay in the seizure of defendant's clothing because it occurred less than two hours after the interview ended. Finally, the search was not unduly intrusive because, as we previously ruled, defendant was ordered to remove his clothing to retain the evidence on the garments rather than to visually inspect his underwear or body. Torres, slip op. at 14-15.

For these reasons, we discern no abuse of discretion by the motion judge. The judge properly concluded the search incident to arrest was constitutional and did not err in denying the suppression motion.

A-1005-18

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-1005-18